## E. W. HOYT ET AL. v. F. HOYT ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued January 26, 1891—Decided October 5, 1891.*
[To be reported.]

1. A trade-mark is not an invention. It does not relate to or affect processes of manufacture or mechanical combinations, but it is a distinctive sign or mark by which a manufactured article, produced by one person, or firm, or maker, is distinguishable from that produced by rival manufacturers.

2. For the reason, among others, that a trade-mark must relate to and distinguish the goods to which it is applied, the size, or shape, or mode of construction of a box, barrel, bottle or package, in which the goods may be put up for transportation, cannot be protected as a trade-mark, nor can it be registered as a trade-mark.

3. A sign, device, or mark, originated and in actual use by one manufacturer cannot be adopted or registered by any other manufacturer who takes a fancy to it, as his trade-mark; and, as such adoption and registration would be an infringement of the rights of the original owner, no title will be conferred on him who makes it.

4. Defendants, manufacturers of cologne, will not be enjoined from using a label resembling the label of the plaintiffs, but not originated by the latter; or, from using bottles that are stock bottles, to which neither party has an exclusive right; or, from using a method of packing bottles, not the exclusive property of the plaintiffs without a patent therefor.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 150 July Term 1890, Sup. Ct.; court below, No. 245 March Term 1886, C. P. No. 4, in Equity.

On March 6, 1886, Eli W. Hoyt and Freeman B. Shedd, trading as E. W. Hoyt & Co., filed a bill in equity against Frank Hoyt and Walter A. Ruhe, trading as F. Hoyt & Co., averring, in substance, as follows:

That plaintiffs resided in Lowell, Mass., and were engaged there, and had been, since the formation of their partnership in

---

* January 4, 1892, a motion for a re-argument was refused.

1870, in making and selling cologne under the name of "Hoyt's German Cologne." The name "German" had been selected merely to give a definite title to the cologne, and they did not intend to offer it as bearing any semblance to German cologne.

That they designed three sizes of bottles for this cologne, calling them large, medium and trial size, which retailed for $1.00, 50 cents and 25 cents, respectively. The large and trial size they designed in 1870, and the medium in 1876.

That in 1871 they originated a cap label for the top of the bottle, and a paper label for the body of the bottle, which labels, with the bottles, were their exclusive trade-marks, and the word "Hoyt's" their exclusive trade name.

That plaintiffs were the first to use the name "Hoyt's" in making cologne. The name "Hoyt's" as applied to cologne, had always been associated in the public mind with the plaintiffs' cologne, and the use of that name upon cologne by another would tend to mislead and deceive the public and be a fraud on plaintiffs.

That on July 20, 1871, they copyrighted their said face label, and on August 14, 1877, received a certificate of the registry in the patent office of the United States of said label and trademark.

That in 1885 plaintiffs learned that defendants, who were manufacturers of cologne in Philadelphia, had been exposing for sale cologne called "Hoyt's Egyptian Cologne," in three sizes, and also a size called "Hoyt's Dime Cologne," with labels similar to the plaintiffs', likely to mislead purchasers and induce them to believe the same was plaintiffs' cologne. That defendants, by selling cologne under trade-marks imitative of the plaintiffs', had injured them and deprived them of sales and profits.

The bill prayed: 1. For an injunction restraining defendants from selling any cologne in bottles with the labels and caps as described. 2. That defendants be restrained from the use of the word "Hoyt's" on all labels and advertisements of every form, in connection with the sale and manufacture of cologne. 3. That defendants be restrained from using the caps and labels described as defendants' labels, and from imitating the trademark, bottles and labels of plaintiffs. 4. That defendants be enjoined from simulating in any manner the bottle, cap, labels

advertisements and packages used by the plaintiffs.  5. That an account be taken, and for general relief.

On March 12, 1886, the defendants filed an answer, averring in substance, as follows:

That the plaintiffs, in adopting the word German in the title of their cologne known as " Hoyt's German Cologne," did so to create the impression that their cologne was really German, in order to get the benefit and advantage to be derived from truly foreign and imported cologne, which has a valuable and distinctive reputation and is of fine quality; thus, the plaintiffs were guilty of a deception and misrepresentation in offering their cologne as German Cologne, when it was an American production.

That plaintiffs were not the originators of the special sizes of bottles, and were not the first persons to use and apply the name " Hoyt's " to cologne; and its use by defendants was not wrongful and would not tend to mislead the public.  One of the defendants, Frank Hoyt, had been manufacturing cologne since 1868, and he adopted in 1876 a label as a trade-mark which was duly registered.

That defendants' cologne was called " Hoyt's Egyptian Cologne " and " Hoyt's Dime Cologne," and the labels upon their cologne clearly showed their address and place of business; and there was prominently printed upon their labels, advertisements and goods, a Sphinx and an Egyptian pyramid, distinguishing their cologne from any other manufacture.

That defendants, since they had been in business, for ten years past, had put up this Egyptian Cologne, and their Hoyt's Dime Cologne, different in kind, name and style from the cologne of plaintiffs, and the same could not be mistaken for Hoyt's German Cologne.

Defendants denied the similarity between plaintiffs' goods and defendants', and that they intended to deceive purchasers, or, in fact, did deceive them.  They denied plaintiffs' exclusive right to the use of the word " Hoyt's," and denied further that the word German was a good trade-mark, and honestly employed, and asked that the bill of plaintiffs be dismissed.

The same day the answer was filed, affidavits presented on behalf of the plaintiffs and defendants were read on a motion by the plaintiffs for a preliminary injunction.

Statement of Facts.

Said motion having been argued, the court, THAYER, P. J., on March 27, 1886, filed an opinion, quoted partly in the master's report, infra, and printed in full in Hoyt v. Hoyt, 2 Pa. C. C. R. 152, concluding:

There must, therefore, be an injunction in this case. But it can by no means be as broad as that asked for by the plaintiffs in their bill. The defendants cannot be enjoined from the use of the name "Hoyt" upon their cologne. As against other persons of the same name the plaintiffs have no exclusive right to that name. The defendants have, also, we think, the right to use the label placed upon the sides of their bottles, if they will place it upon other bottles not resembling the plaintiffs' bottles in their peculiar shape, and without the plaintiffs' peculiar cap label. They might lawfully place it upon the miniature champagne bottles which they formerly used, before they began to imitate the plaintiffs' peculiar shape, or upon any other style of bottle, which does not bear a striking resemblance to the plaintiffs' bottles. In other words, they may keep what is their own, if they will not combine it with the marks and indicia which are calculated to deceive the public and injure the plaintiffs. But the defendants must be enjoined from putting up and offering for sale cologne in the bottles described in the bill, with the labels thereon complained of in the bill.

Preliminary injunction awarded, upon security being given by the plaintiffs in the sum of five thousand dollars.

A formal decree awarding a preliminary injunction in accordance with the foregoing opinion having been entered, issued and served, issue was joined and the cause referred to *Mr. C. Stuart Patterson*, as examiner and master.

On November 27, 1889, the master filed a report finding, inter alia, that the plaintiffs' cologne was put up in oblong round bottles with a sunken panel on the back side. The bottles were of three sizes, large, medium and trial. The medium and trial sizes were packed by dozens in cardboard boxes, with separate spaces for each bottle; and when the cover was taken off, the open front exposed the full front labels upon each bottle. The bottles of the large size were packed in wooden boxes having pasted upon the front and back labels printed in black letters upon a white ground, containing the

words, " One Doz. Hoyt's German Cologne, Fragrant and Lasting. E. W. Hoyt & Co., Proprietors, Lowell, Mass." The bottles themselves of the large size, containing each about one pint of the liquid, had a cap label pasted on two sides of the neck of the bottle and over the cork, so that in taking out the cork the label must be destroyed, and printed in black upon white paper, having upon one side of the neck the word " fragrant," and upon the other side of the neck the word "lasting," and having upon the centre of the label over the cork the words " dollar size " and the initials " H. & Co.," arranged in a monogram, and having also upon the inner side of the outer line in the central portion of the label the words " beware of counterfeiters," and having upon the outer side the words " E. W. Hoyt & Co., Lowell, Mass." Upon the front of the bottle there was pasted a label in the shape of a parallelogram, printed upon white paper, in black, red, and gold, with the words, " Hoyt's German Cologne, Large Bottle, Price $1.00. E. W. Hoyt & Co., Proprietors, Lowell, Mass. All Genuine signed E. W. Hoyt & Co. Entered according to Act of Congress, 1871, by E. W. Hoyt & Co., in the office of the Librarian of Congress, Washington." The words referred to in the registration of the ·trade-mark were in very small and almost illegible type, but the other words were in larger and more prominent type. The label was pasted on the bottle with the left-hand upper corner higher than the right-hand upper corner, and the left-hand lower corner higher than the right-hand lower corner. Upon the sunken panel in the rear of the bottle appeared, parallel to the axis of the bottle, the words blown in the glass " E. W. Hoyt & Co. Hoyt's German Cologne, Lowell, Mass."

The defendants, at the time the bill was filed, manufactured and sold cologne in three sizes of bottles. The large-sized bottles contained a smaller quantity of liquid than those of the plaintiffs, but in appearance they were very like plaintiffs' bottles, except that in the panel on the back there were blown in the glass, perpendicular to the axis of the bottle, the words " Hoyt's Egyptian Cologne, F. Hoyt & Co., Philada., Pa." The cork was covered by a cap label coming down upon the two sides of the neck of the bottle, printed in black, red, and gold, upon a white ground, and having upon one side of the label the word " genuine," upon the other side of the label the

word "signed," and upon the top of the label the words " F. Hoyt & Co." in red upon a gold ground.   The front or face label, which was a right-angled parallelogram covering almost the whole front of the bottle, was printed in black, red, and gold, and had upon it the words " Hoyt's Egyptian Cologne, delicate and lasting.   F. Hoyt & Co., Proprietors, Philadelphia. Registered Patent Office, Trial Size 25 cents.   This size bottles $1.00 ; " and also an engraved picture of a Sphinx and a pyramid.   After the special injunction was served, the defendants abandoned the sale of bottles of this class.

.. The medium-size bottle of defendants was of a like shape and had upon it somewhat similar labels and legends.   The defendants discontinued the sale of bottles of this class after the injunction, but they made and sold three other sizes, one called the trial size, containing Egyptian cologne, another size containing Geranium cologne, and another size called Dime cologne. The bottles, labels, etc., of each of these sizes resembled the bottles of the sizes before mentioned, save that on the two smaller sizes the engraved picture of the Sphinx and pyramid did not appear.   The packages in which the defendants' bottles were packed closely resembled the packages of the plaintiffs.

Upon his findings of fact, the master made the following report:

The case, as made by the findings of fact, is that the plaintiffs have, by their energy, industry, and liberal expenditure of money, secured a large sale in the United States for cologne of their own manufacture, put up in bottles of their own devising and of peculiar shape, with labels printed in an original combination of colors, packed in a distinctive manner, sold under the name of Hoyt's German Cologne, and known in the trade by that name, and also by the name of Hoyt's Cologne.   The defendants have been and are manufacturing and selling cologne, and they have intentionally imitated the plaintiffs' bottles, labels, and method of packing, and have thereby put themselves in the position of selling as goods of the plaintiffs' manufacture, goods which are really of their own manufacture ; and they have thereby appropriated to themselves the benefit of the plaintiffs' advertising and business reputation.   Upon these facts, the plaintiffs pray an injunction to restrain the de-

fendants from the use of the word " Hoyt's " in their labels and advertisements, and from selling or disposing of any cologne in bottles imitative of the plaintiffs' bottles. The plaintiffs also pray an account of the defendants' sales, and a decree for payment to them of such amount as may be found due.

The defendants deny any imitation of the plaintiffs' goods, either in intention or in fact, but the master has been compelled to find as a fact that they have intentionally imitated the plaintiffs' bottles, labels, and mode of packing.

The master quotes, as the best expression of the law as applicable to the facts of this case, the following extracts from the judgment of the learned president judge of the court:

"In the leading case of Croft v. Day, 7 Beav. 84, Cox, 40, it was well said by Lord LANGDALE: 'It is perfectly manifest that two things are required for the accomplishment of a fraud such as is here contemplated. First, there must be a general resemblance of the forms, words, symbols, and accompaniments to mislead the public; and, secondly, a distinctive individuality must be preserved so as to procure for himself the benefit of that deception which the general resemblance is calculated to produce.' In McLean v. Fleming, 96 U. S. 245, it was held by the Supreme Court of the United States that to constitute an infringement exact similitude is not required. All that is necessary to show is that the imitation is such that purchasers are likely to be deceived by the resemblances. It is no answer that in certain particulars the defendants' marks differ from the plaintiffs', so long as the imitation in other respects is so apparent that purchasers have been and are likely to be deceived: Brown v. Mercer, Sebastian's Digest, case 435. The imitation need not be exact and perfect. It may embrace variations that a comparison would instantly disclose: Cook v. Starkweather, Idem, case 395. And so in our own cases of Wamsutta Mills v. Allen, 12 Phila. 535, and Colton v. Thomas, 7 Phila. 257: 'An imitation with partial differences, such as the public would not observe, does as much harm as an entire counterpart. If such variations impose on a portion or class of customers only, it is evident that the damage is of the same character, though varied in amount or degree;' per Allison, P. J. In that case, it is not necessary that the imitation should be such as to deceive a person accurately scrutinizing it. It is

### Master's Report.

sufficient if it is done with the intention of deceiving any class of purchasers: Hennessy v. Hogan, Cox, case 651. 'Whether a person has or has not a property in the name or mark, I have no doubt that another person has not the right to use that name or mark for the purpose of deception, in order to attract to himself that course of trade which without that improper act would have flowed to the person who first used it:' Per Lord LANGDALE, M. R., in Perry v. Trufitt, 6 Beav. 66, Cox, 73. . . . . . The exact imitation is not requisite to entitle plaintiff to his remedy : Amoskeag Co. v. Spear, 2 Sandf. 599; Barrows v. Knight, 6 R. I. 434 (78 Am. Dec. 452 ); Bradley v. Norton, 33 Conn. 157 (87 Am. Dec. 200). It would be a mistake to suppose that the resemblance must be such as would deceive persons who should see the two marks side by side. The rule so. restricted would be of no practicable use : Seixo v. Provenzende, L. R. 1 Ch. 192; Seb. Dig., case 256. 'Though no one particular mark is exactly imitated, the combination is very similar and likely to deceive;' Injunction granted: Abbott v. Bakers' and Confectioners' Tea Ass'n, Seb. Dig., case 379. It is not necessary that the intention should be to deceive persons who carefully examine. The old ruling, that the imitation must be such as to deceive a person paying ordinary attention, has been long abandoned. The law now is that it is enough that there is a class of customers who examine so carelessly that they would be deceived by the resemblance between the two: Hennessy v. White, Seb. Dig., case 650. Said STOWELL, C. J., in that case, 'We were invited to consider the arm and battle-axe on the defendant's label, and, because it was not adopted by the appellant, to disregard all other matters as of no importance. But this is precisely the course which the courts have carefully avoided, namely, selecting any one or more matters either of resemblance or difference, and considering them essential, or attempting to define a priori what might or might not constitute an improper imitation by one person of the manufacture of another, for such a course would manifestly offer inducements to fraud. Persons so disposed would then endeavor to avoid the one or more objectionable points, but yet so present the particular article for sale as to impose on the unwary, who accept as sufficient proof of genuineness a resemblance in the main without closely examining details.'

Master's Report.

And this case furnishes a complete answer in the present case to the argument founded on the presence of the Sphinx and pyramid on the defendants' label, and its absence from that of the plaintiffs. Substitute for 'arm and battle-axe' Sphinx and pyramid, and we have here the case of Hennessy v. White over again. Whatever differences may have been introduced, the fact remains that by the arts resorted to, the defendants have produced such a general resemblance in the main between their wares and those of the plaintiffs, that many people are liable to be deceived thereby, and to buy the defendants' goods under the belief that they are getting those of the plaintiffs. In our opinion, it is in the highest degree improbable that these resemblances are fortuitous. Everything indicates that they are the result of a deliberate design to imitate the plaintiffs' goods, and this inference is strengthened by other facts in the case. The defendants have not only imitated the plaintiffs' bottles, but also the pictorial cards and advertisements used by the plaintiffs, and even the wooden boxes in which the bottles are packed."

The defendants also set up as a defence that the distinctive word of the plaintiffs' trade-mark is " German," and is intended by the plaintiffs to give the impression that their cologne is imported from Germany.

It is true that it is an equitable maxim, " that he who comes into equity, must come with clean hands," and therefore, as SHARSWOOD, J., said in Palmer v. Harris, 60 Pa. 160, " the party who attempts to deceive the public by the use of a trade-mark which contains on its face a falsehood as to the place where his goods are manufactured, in order to have the benefit of the reputation which such goods have acquired in the market, can have no claim to the extraordinary interposition of a tribunal constituted to administer equity." See also Pidding v. How, 8 Sim. 477 ; Flavel v. Harrison, 10 Hare 467.

But the facts of this case do not bring the plaintiffs within this rule. Each of their labels contains, in conspicuous type, the words, " E. W. Hoyt & Co., Proprietors, Lowell, Mass," and there is not one word in the plaintiffs' advertisements or labels which represents their cologne to be of German manufacture, unless such a representation can be held to be implied from the use of the word " German." Upon this point, the

president judge of the court said, in deciding the motion for
the special injunction, "that it would be as fair to presume
that when a person advertised Venetian blinds he intends that
the public should understand that the article is made in Venice,
or that the defendants, in calling their article cologne, intend to
pass it off as an article made in the city on the Rhine which
gives it its name.   There can be no just inference of a fraudu-
lent intent from the use of such a designation, particularly
when a manufacturer, as here, puts his name and the place of
manufacture upon the bottle he uses."

It does not affect the question that some unintelligent per-
sons have bought the plaintiffs' cologne under the mistaken
impression that that cologne was manufactured in and imported
from Germany, for the mistakes of such purchasers were not
based upon any acts or words of the plaintiffs, and the legal
test is, have or have not the plaintiffs so acted as to deceive
purchasers of average intelligence?   Tried by this test, the
plaintiffs must be held blameless upon this point.

The general doctrine upon which equity acts in cases of this
nature is, as stated by LANGDALE, M. R., in Perry . v. Trufitt,
6 Beav. 66, that "a man is not to sell his own goods under the
pretext that they are the goods of another man; he cannot be
permitted to practice such a deception, nor to use the means which
contribute to that end.   He cannot therefore be allowed to use
names, marks, letters, or other indicia, by which he may induce
purchasers to believe that the goods which he is selling are the
manufacture of another person."   Reference need only be made
to the authorities quoted by the president judge of the court,
in his judgment granting the special injunction; and, under
the view of the law there stated, and upon the facts found by
the master, it must inevitably be held that the plaintiffs are
clearly entitled to an injunction restraining the defendants
from putting up and offering for sale cologne in the bottles de-
scribed in the bill with the labels therein complained of, and
that the plaintiffs are entitled also to a decree for an account.

The plaintiffs also ask upon the proofs for an injunction to
restrain the defendants from the use of the word "Hoyt's" in
their labels and advertisements in connection with the sale and
manufacture of cologne, and the defendants contend that the
plaintiffs are not entitled to any right of property as a trade-

mark in the word "Hoyt's," and therefore that the defendants cannot be restrained from selling cologne of their own manufacture as "Hoyt's Cologne." Upon this point, the president judge of the court said in his judgment, before referred to :

" Every man has the right to put his name upon goods of his own manufacture. No single manufacturer can arrogate to himself the exclusive use of a name which he shares in common with other persons. As against persons bearing a different name, a manufacturer's right in his name trade-mark is absolute and exclusive, but as against persons bearing the same name, no such exclusive right can be set up. This point is settled by a multitude of cases. Nevertheless, it is well settled that if a manufacturer combines his name with marks and symbols which are a colorable imitation of the marks and symbols of another person of the same name, so as to confuse his own goods with those of another manufacturer, in such a manner as to be calculated to deceive the public, he will be enjoined from so doing. A person will not be allowed to use his own name in such a manner as to represent his goods to be those of another person of the same name : McLean v. Fleming, 96 U. S. 245. As was said by DALY, J., in the case of England v. New York Co., 8 Daly 375 : ' The test is whether he uses the name honestly and fairly, or dishonestly, to palm off his own commodity as the production of another.' "

At the hearing of the motion for the special injunction, the court held that the defendants could not be enjoined from the use of the name " Hoyt's " upon their cologne. But the case before the master is much stronger for the plaintiffs upon this point, than that presented to the court on the motion for the injunction. It has been found that the plaintiffs have acquired for their cologne a trade designation of which the word "Hoyt's" is an essential and integral part. It must also be remembered that the defendants' firm name is not "Hoyt's" but F. Hoyt & Co., Frank Hoyt and Walter Ruhe having formed a partnership under that firm name. If they designated their cologne in their advertisements and upon their bottles and labels " F. Hoyt & Co.'s Cologne," those labels and advertisements would speak the truth; but the fact that one partner in the firm bears rightfully the name of Frank Hoyt does not entitle the firm to put upon their bottles, labels and advertisements, the designation

" Hoyt's," when the word " Hoyt's " is an integral part of a trade designation in which the plaintiffs have rightfully acquired a prior and exclusive property. In fact, the word " Hoyt's " was never used by the defendants until after they had entered upon their course of imitating the plaintiffs' goods; and the word " Hoyt's " has been and is now used by the defendants in connection with bottles, labels, and a mode of packing, which has been intentionally adopted by the defendants in imitation of the plaintiffs' bottles, labels, and mode of packing. The case is therefore brought within the rule of law as laid down by the president judge in the extract quoted from his judgment, and the authorities cited by him conclusively determine the right of the plaintiffs to a decree restraining the defendants from using the word " Hoyt's." The master is therefore compelled to hold that while the defendants are entitled to use their firm name, " F. Hoyt & Co.," in their advertisements and labels, they cannot be permitted to use the word " Hoyt's " without prefix, for the reason that that word has been antecedently and rightfully appropriated by the plaintiffs as an integral part of the designation of their goods, and the continued use of that word by the defendants would be a fraud upon the plaintiffs.

The master annexes hereto a form of decree.

—The defendants filed a large number of exceptions to the master's report. Said exceptions having been overruled by the master and argued before the court in banc, they were dismissed, without opinion filed, and on January 27, 1890, the following decree was made: That a writ of injunction issue restraining the defendants, etc.,

1. From putting up, or selling, or exposing for sale, or offering for sale, cologne in such bottles as are in the plaintiffs' bill described as the plaintiffs' bottles, or in bottles resembling the plaintiffs' bottles, with cap labels, or front labels, as described in the plaintiffs' bill, or otherwise imitative of the plaintiffs' labels.[35]

2. From using the word " Hoyt's " as the initial word of the description of their cologne upon any advertisement, label or bottles of any cologne offered or exposed for sale by them or either of them.[36]

3. From putting up, or selling, or exposing for sale, or offer-

ing for sale, cologne in any boxes or bottles, or with any labels simulating or imitating the plaintiffs' bottles, boxes or labels.[37]

4. That an account be taken of the defendants' sales of cologne as made in boxes or bottles, or with labels imitating the plaintiffs' boxes, bottles and labels; and the defendants are hereby ordered to pay to the plaintiffs such sums of money as by the said account shall be found to be due and payable by them.[38]

And on March 29, 1890, a further decree was entered for $2,500 against the defendants and in favor of the plaintiffs, with costs to plaintiffs in the sum of $1,750, "as if that amount had been proven and taxed." [39]

—Thereupon the defendants took this appeal, assigning for error:

1–34. The dismissal of defendants' exceptions.

35–39. The sections of the final decree entered.[35 to 39]

*Mr. William Henry Peace* and *Mr. F. Carroll Brewster*, for the appellants:

1. It is a significant circumstance, proved by the plaintiffs, that they have proclaimed to the world that their trade-mark consists in the shape of their face label, which is an oblique-angled parallelogram. It was this label they registered at the patent office in 1877. There is no arbitrary word, sign, or symbol on the package, except the shape of the face label. Now, defendants' face label is not of the shape of that of the plaintiffs; and moreover, it may be seriously questioned whether labels and advertisements, as mere labels and advertisements, may constitute trade-marks: Leather Cloth Co. v. Leather Cloth Co., 11 Jur., N. S., 513. The plaintiffs' bottle is not a trade-mark; it is but the form of putting up the goods: Moorman v. Hoge, 2 Saw. 78; Browne on Trade-marks, 108. And the shape and arrangement of the boxes cannot constitute a trade-mark: Sawyer v. Meyer, 2 W. N. 197; Browne on Trade-marks, 113. Nothing can protect a vessel, such as a bottle, except a patent.

2. Plaintiffs' fraud in the use of the word German bars their right. It is essential that the plaintiff in a bill for an injunction should not himself be guilty of any fraud or misleading representation in his trade-mark, or in the business connected

with it; for, if the plaintiff make any material false statement in connection with the property he seeks to protect, he loses, and very justly, his right to claim the assistance of a court of equity: Leather Cloth Co. v. Leather Cloth Co., 4 De G. J. & S. 137; s. c. affirmed, 11 H. L. 523; Fetridge v. Wells, Sebastian's Dig., case 144; Hobbs v. Francis, Seb. Dig., case 191; Palmer v. Harris, 60 Pa. 156; Laird v. Wilder, 9 Bush 131 (15 Am. Rep. 707); Connell v. Reed, 128 Mass. 477; Manhattan Med. Co. v. Wood, 108 U. S. 218; Siegert v. Abbott, 61 Md. 276 (48 Am. Rep. 101); Pidding v. How, 8 Sim. 477; Ginter v. Kinney, 12 Fed. R. 782; Flavel v. Harrison, 10 Hare 467; Saunion & Co., Cox's Manual, 625; Rev. St. U. S., § 4943; § 8, act of Congress, March 3, 1881, Rev. St., sup., 606; Canal Co. v. Clark, 13 Wall. 311; Glendon Iron Co. v. Uhler, 75 Pa. 467.

3. In a suit to restrain the use of trade-marks alleged to be simulated, if it appear that the marks used by the defendants, though resembling the plaintiffs' in some respects, would not probably deceive the ordinary mass of purchasers paying the attention which such persons usually do, in buying the article in question, an injunction will not be granted: Spottiswoode v. Clark, 2 Sandf. Ch. 628; Partridge v. Menck, 2 Sandf. Ch. 622; Blackwell v. Crab, 36 L. J. R. Ch. 504; Sawyer v. Meyer, 2 W. N. 197. And a plaintiff cannot have a right in his own name in a trade-mark, as against a person of the same name, unless the form of stamp or label of the latter is so similar as to represent that the goods are of the former's manufacture: Gilman v. Hunnewell, 122 Mass. 139; Laughman's App., 128 Pa. 1. The defendant, F. Hoyt, is entitled to the use of the name "Hoyt's:" Burgess v. Burgess, 3 De G. M. & G. 896; Comstock v. White, Seb. Dig., case 180; Faber v. Faber, 49 Barb. 357; Emerson v. Badger, 101 Mass. 82; James v. James, L. R. 13 Eq. 421; Hardy v. Cutter, Seb. Dig., case 427; Meneely v. Meneely, 62 N. Y. 427 (20 Am. Rep. 489); Decker v. Decker, 52 How. Pr. 218; Pratt's App., 117 Pa. 401.

*Mr. J. Levering Jones* and *Mr. John G. Johnson* (with them *Messrs. Carson & Phillips*), for the appellees:

1. A man is not to sell his own goods under the pretence that they are the goods of another man; he cannot be permit-

Opinion of the Court.

ted to practice such deception, nor to use the means which contribute to that end.  He cannot therefore be allowed to use names, marks, letters, or other indicia, by which he may induce purchasers to believe that the goods which he is selling are of the manufacture of another person : Perry v. Trufitt, 6 Beav. 66 ; Seixo v. Provenzende, L. R. 1 Ch. 192 ; Levy v. Walker, 10 Ch. D. 447 ; Williams v. Johnson, 2 Bosw. 1 ; Sawyer v. Horne, 1 Fed. R. 24.  And a party will be protected from the imitation of the packages peculiarly designed and shaded for the purpose of distinguishing his goods, and from the imitation in color, design, style, and lettering combined, of the labels used to mark such packages when put on the market : Carbolic Soap Co. v. Thompson, 25 Fed. R. 625 ; Seb. on Trade-marks, 112, 255.

2. And where a person uses his own name, for the purpose of fraud, if satisfactory evidence of fraudulent intention can be produced, such unfair conduct will be restrained, even though the free use of the man's own name may be thus hindered : Seb. on Trade-marks, 26 ; Dunnachie v. Young, Seb. on Trade-marks, 26 ; Gillis v. Hall, 8 Phila. 231 ; England v. Publishing Co., 8 Daly 377 ; Holmes v. Holmes, 37 Conn. 278 (9 Am. Rep. 324) ; Massam v. Cattle Food Co., L. R. 14 Ch. 752 ; Rogers Mfg. Co v. Manuf. Co., 11 Fed. R. 495 ; Landreth v. Landreth, 22 Fed. R. 43 ; Shaver v. Shaver, 54 Ia. 208 (37 Am. Rep. 194) ; Clayton v. Day, 76 L. T. 79 ; Devlin v. Devlin, 69 N. Y. 212 (25 Am. Rep. 173) ; Croft v. Day, 7 Beav. 84 ; Lee v. Haley, L. R. 5 Ch. 155 ; Meneely v. Meneely, 62 N. Y. 431 (20 Am. Rep. 489) ; Taylor v. Taylor, 23 L. J. Ch. 255.

OPINION, MR. JUSTICE WILLIAMS :

The cases in which a court of equity will interfere to protect a trade-mark are divisible into two classes.  To the first of these may be referred those cases in which the trade-mark has been registered under a system provided by law for the protection of the owner in its use.  To the other, belong all those cases in which there has been no registration, and in which the true ground for interference is the prevention of fraud.  In cases falling within the first class, property in the trade-mark is shown by the certificate of registration.  In those belonging to the second, the right asserted is of common-law

origin, and is shown by proof of the adoption and use of the trade-mark. Its invasion is a fraud upon the owner and the public, to be restrained on principles of common right. All monopolies are odious, and their maintenance in favor even of inventors, is limited in duration. When a statutory term of protection is over, whatever is valuable in the subject of the patent becomes, as does an unpatented invention, a contribution to the public welfare, and may be freely used as such. Competition is essential to commerce, and, within legitimate, lines, should always be encouraged. " The survival of the fittest," is a law of trade, no less than of the development of living organisms ; and from the struggle which determines who and what is " fittest," come general development and progress. As a general proposition it may be said that one may imitate what is excellent in the processes and business methods of his neighbor as freely and as safely as he may imitate what is good in his moral character, as long as he infringes no right secured to him by statute, and does not fraudulently personate him or simulate his products. An inventor who secures a patent for his device is protected in his exclusive right during the period fixed by law. When that period expires, his exclusive right expires with it, and thereafter he stands on no higher ground than any other citizen who may desire to use the thing or combination covered by the patent. The rules applicable to trade-marks are quite different. A trade-mark may increase in value to its owners by use, and the law could not put a time limit on the owner's right to it any more than it could put a limit upon his right to use any other article of property.

A trade-mark is not an invention. It does not relate to or affect processes of manufacture or mechanical combinations. It is a sign or mark by which the manufactured articles produced by one person, or firm or maker, are distinguishable from those produced by rival manufacturers. It must be distinctive, and indicate the personal as distinguished from the geographical origin of the article to which it is applied : Laughman's App., 128 Pa. 1. Thus Sonman, the name of a large tract of land, cannot be appropriated by one of several owners of land within the tract, to the exclusion of the other owners; nor Lackawanna Valley, by one operator in that valley, to the exclusion of all others. But the trade-mark must relate to and

Opinion of the Court.

distinguish the goods to which it is applied. For this reason, among others, the size or shape, or mode of construction of a box, barrel, bottle or package, in which goods may be put, is not a trade-mark. If there is any new and useful combination in the construction of such box or package, it should be patented as an invention, if the owner wishes to prevent others from using it; but such package cannot be registered as a trade-mark. A sign, device or mark, originated and in actual use by another, cannot be adopted and registered by any one who takes a fancy to it, as his trade-mark, and such adoption and registration will not confer a title on him who makes it. It would be an infringement upon the original owner, and from the wrong so done, no valid title could grow. A trade name may, in a general way, be treated as a trade-mark, and protected in the same manner. When a business has been conducted by some person or firm under a particular trade name until the public come to regard the name as affording an assurance of the good quality of the article bearing it, the name is a valuable part of the business assets of the person or firm whose skill and integrity have won confidence for it. A rival who should appropriate the trade name to his own use without the consent of the owners, and put his goods on the market bearing it, as though they were made by the rightful owner of the trade name, is guilty of a fraud on the public, and a fraudulent taking from the proprietors, which is, both in intent and effect, a larceny. But when such rival puts his goods on the market, on their own merits and under his trade name, his neighbors have no just ground of complaint if he has imitated, adopted or improved upon their unpatented methods and processes : Putnam Nail Co. v. Dulaney, 140 Pa. 205.

It only remains to apply these general principles to the case now before us, so far as they are applicable to the questions raised by the appeal of the defendant below. The plaintiffs claim that the front or face label on their bottles has been registered by them as a trade-mark. It is put on obliquely to the length of the bottle. It bears the name of the liquid in the bottle thus, " Hoyt's German Cologne." It also bears the name and residence of the makers, and a reference to the fact of its registration. They also claim the following unregistered trade-marks : a bottle, having a depression or panel on the back

Opinion of the Court.

side ; a cap label over the cork in the bottle ; a peculiar mode of arranging and packing bottles in boxes; and in the name of the article sold, viz., " Hoyt's German Cologne." The defendants have a registered label or trade-mark which goes upon the bottle at right angles with its length, and which contains the name of the liquid, " Hoyt's Egyptian Cologne," with a view of a pyramid and the head of the Sphinx; with the names and residence of the makers, and a reference to its registration. The learned judge of the court below held that F. Hoyt, of the defendant firm, had a legal right to use his own name in his business, and that he could not be enjoined from using it upon goods produced by himself. The correctness of this holding is not raised by the defendants' appeal. The learned judge also held that the defendants' trade-mark or label was not an infringement upon that of the plaintiffs, whether considered by itself or in connection with the champagne shaped bottles on which it was originally used by the defendants. This also must be regarded as settled for the purposes of this appeal, since the plaintiffs have not appealed, and the defendants cannot, from this ruling. Then, too, the evidence shows very clearly that the bottle with the depression or panel on the back side, which both parties are now using, is a stock bottle, to which neither of them has any exclusive right, and which is freely sold by manufacturers to all who apply. This bottle, as we have already seen, is not a trade-mark. It is not registered, and it is not capable of registration. It is in common use, open to the purchase and use of all who may fancy its shape, in the same manner as the other stock bottles. The cap label was not originated by the plaintiffs and does not belong to them. It was devised, according to the uncontradicted testimony, by Dr. David Jayne, a Philadelphia chemist and dealer in medicines, and was used by him and his successors for years before and since the plaintiffs assumed to adopt it as their own. Their adoption of his cap label gave them no title to it. The mechanical arrangement of the bottles in boxes is neither an invention nor a trade-mark. If the box is an invention, and others are to be prevented from using it, the plaintiffs should have secured a patent for it. Without letters patent they have no exclusive property in the shape or construction of a box. Whatever one manufacturer or tradesman may do to increase the

Opinion of the Court.

safety of his goods in transportation, or to display them advantageously upon shelves, counters, or in show windows, is simply a good example or model for the public, which any one interested may imitate with impunity.

The debatable ground presented by this appeal is thus seen to be very narrow. It may be learned to the best advantage by considering the language of the court below and the form of the decree made. The decree did not hold the defendants' label to be an infringement, or deny the defendants the use of their name unless used as an initial word. On the contrary, the learned judge said : " The defendants have also, we think, the right to use the label placed on the sides of their bottles." If, therefore, they made cologne, and sold it in bottles such as they used at first, with their labels upon them, they were exercising a clear legal right, and could not be enjoined. " But," the opinion continues, " the defendants must be enjoined from putting up and offering for sale cologne in the bottles described in the bill, with the labels thereon." The court held that the defendants' label was no infringement, and was lawfully used on a stock bottle with a champagne bottle shape ; but, if the same label was used on another stock bottle having a panel on the back side, it became an infringement because of the shape of the bottle on which it was placed, and the use of the label on such a bottle must be prevented by injunction. As both styles of bottle were open to the public as stock bottles, the label was as lawful upon one of them as upon the other. The plaintiffs could no more acquire an exclusive right to a stock bottle by priority of use than they could acquire an exclusive right to Dr. Jayne's cap label by being the first to appropriate it without his knowledge or consent. Adopting the conclusions of the learned judge, that the label of the defendants did not infringe upon that of the plaintiffs, we cannot sustain this decree. It is accordingly set aside ; and as no ground of equitable relief appears upon the record before us,

The bill is dismissed at the cost of the appellees.

On January 4, 1892, a motion for a re-argument was refused.