WARREN BROTHERS CO. *v.* BARBER ASPHALT PAVING CO.

TRADE-NAMES—UNFAIR COMPETITION—DECEPTION OF PUBLIC.

The fact that complainant coined the word "Bitulithic" to designate a particular kind of pavement manufactured by itself, caused it to be copyrighted, and filed it for record as a copyrighted word in the office of the secretary of State, is no ground for an injunction to restrain defendant from offering to furnish similar pavement according to proposals advertised by a city under the name "Bitulithic," where the proposal specifies in detail the materials and proportions thereof which are to go into the pavement.

Appeal from Wayne; Hosmer, J. Submitted December 6, 1905. (Docket No. 150.) Decided July 23, 1906.

Bill by the Warren Brothers Company against the Barber Asphalt Paving Company to restrain the use of a trade-name. From a decree dismissing the bill, complainant appeals. Affirmed.

*Clark, Jones & Bryant,* for complainant.

*John J. Speed,* for defendant.

MOORE, J. The bill was filed for an injunction to restrain the defendant from infringing upon the trade-name of the complainant and from offering to manufacture or construct the Bitulithic pavement or any pavement under that name, and prayed that the court determine the complainant to be the sole owner of the right to use the trade-name "Bitulithic" in connection with street pavements. The bill in substance alleges that a certain form of street pavement had been designed and invented by Frederick J. Warren, which had been brought to its present state of perfection through an organization of experts, and that said Warren had assigned all his rights to a corporation that on February 27, 1900, was changed to Warren Brothers Company, the complainant; that the complainant advertised the pavement very extensively in numerous

States of the United States and Canada, and about the 1st day of January, 1902, it coined the word "Bitulithic" and applied said word to said pavement and thereafter designated its pavement by that name; that it continued to manufacture said pavement and to sell it under the name "Bitulithic Pavement," and at great expense made the pavement under that name known to purchasers and prospective purchasers, and that it has become popular and well known in all of the cities of this country, and a great demand therefor has been created, and that a valuable good will and property in the name "Bitulithic" as a trade-name and as applied to the pavement manufactured and sold by the complainant has been acquired, and that the purchasing public has become accustomed to associate the term "Bitulithic," as applied to street pavements, to the particular pavement manufactured and sold by the complainant.

The bill also alleges the investment by complainant of a large sum of money to enable complainant to meet the requirements of its business of manufacturing and selling the particular form of pavement known and designated by it as "Bitulithic" and that the complainant has caused the word "Bitulithic," as applied to street pavements, to be copyrighted and to be filed for record as a copyrighted word in the office of the secretary of State of the State of Michigan. The bill also alleges that the Barber Asphalt Paving Company was also organized for the purpose of constructing street pavements, and that until about the time of its attempt to infringe upon the rights of the complainant it was principally engaged in the selling and constructing of sheet asphalt pavements.

That on July 15, 1904, the city of Detroit, by its department of public works, called for proposals for the construction of a large amount of Bitulithic pavement. That the right to sell and construct said pavement was a valuable property right and belonged exclusively to the complainant and to its duly authorized representatives. That at the time fixed for the submitting of proposals the defend-

ant submitted proposals, and thereby offered to sell and to construct a pavement which it designated " Bitulithic," and the purpose and intention of the defendant in offering to construct a pavement named " Bitulithic" was to appropriate to itself the good will and property acquired by the complainant in the name " Bitulithic" as applied to street pavements. That the defendant has offered to sell to various cities and villages in the State of Michigan a pavement manufactured by it under the name " Bitulithic Pavement," and of so nearly and substantially the same general character of construction as that manufactured and sold by the complainant as to deceive the general public, and that the purpose of the defendant in so doing has been and is to appropriate to itself the good will and property of the complainant in the name " Bitulithic" as applied to street pavements, and that unless restrained the defendant will further infringe upon the complainant's rights, and prayed for an injunction.

The defendant answered, denying that this pavement was the original invention of Frederick J. Warren; that it has no knowledge as to whether the word " Bitulithic," as applied to street pavements, was coined by the complainant or not; that it has no knowledge as to whether the word " Bitulithic " was copyrighted by the complainant or filed for record as a copyrighted word in Michigan; that it denies that it has sold or constructed any kind of street pavement by the name " Bitulithic," but it admits that it has constructed pavements somewhat similar to the complainant's Bitulithic pavement. It admits the call for proposals by the department of public works of Detroit, but alleges that specifications had been adopted designating the material and the method of construction and character of the work required and that its proposal was made in accordance with the same, and that it would not be lawful for the department of public works to receive bids for a pavement described merely by a certain name, but only upon specifications describing its construction. It denies it has the intention of violating any of

the rights of the complainant, and denies that by the use of any term in bidding upon specifications for the construction of a pavement any one could be misled into the belief that the pavement the defendant proposed to supply was one manufactured or to be manufactured by the complainant.

Proofs were taken in open court and the bill was dismissed. The case is brought here by appeal.

Counsel for complainant say:

"This is not a technical trade-mark case. The bill is filed for the purpose of restraining the defendant from engaging in acts of unfair competition and particularly from appropriating or attempting to appropriate to itself a valuable good will which belongs to the complainant. * * *

"The proofs in the case clearly establish priority of adoption of the name 'Bitulithic' by the complainant, and its application to a street pavement of its own manufacture, and that this form of street pavement has never been manufactured or constructed until the complainant and its predecessors began to build it, nor had the name 'Bitulithic' ever been used to designate a street pavement until coined by the complainant for the purpose of designating its own particular pavement. The proofs also clearly establish the fact that whatever good will the Bitulithic pavement has acquired has been due solely to the complainant's efforts, and that these efforts have been very extensive and costly, and that they have been successful in fact in building up a great reputation for the Bitulithic pavement, by virtue of which it must be concluded that the good will attaching is a property right of great value owned exclusively by the complainant."

And it is said defendant seeks to take advantage of this situation by unlawfully offering to sell and build the pavement. Many authorities are cited which counsel contend support their theory.

The position of defendant, briefly stated, is:

"That the department of public works advertised for bids for pavements on Canfield and other avenues in the city of Detroit; that while the pavement desired was designated as 'Bitulithic Macadam,' it required the pavement to be constructed according to specifications theretofore adopted by the common council, which specifications

designated the material, the method of construction and character of the work required. And as the work was to be done upon contract in which the contractor agrees to do the work according to the specifications, it is clear that under bids and contracts made by the defendant there could be no contention possible that any one could be deceived into the belief that the work was done by the complainant or with materials furnished by it, whatever may be the particular name by which the pavement was designated."

The inventor of the Bitulithic pavement did not see fit to patent it. The name which was attached to it was copyrighted and the article has been extensively advertised and sold under the name by which the complainant and its predecessor has called it. Does the fact that it has been so called, advertised, and sold prohibit the defendant and others from offering to bid upon the construction of pavements called in the proposal for bids Bitulithic macadam, when immediately following said designation it was stated in said proposal:

" Said streets and avenues to be paved according to the specifications adopted by the common council February 23, 1904; also to the estimates of the city engineer, as above, and the charter and ordinances of the city of Detroit."

A trade-name does not give one the exclusive right to make or sell a given kind of goods. See *Globe-Wernicke Co.* v. *Fred Macey Co.*, 119 Fed. 703; *Fairbanks* v. *Jacobus*, 14 Blatchf. 337; *Putnam Nail Co.* v. *Dulaney*, 140 Pa. 205 (11 L. R. A. 524); *Powell* v. *Brewing Co.*, L. R. 62 Ch. Div. 68, 72.

In *Canal Co.* v. *Clark*, 13 Wall. (U. S.) 311, Mr. Justice Strong for the court said:

" The office of a trade-mark is to point out distinctly the origin or ownership of the article to which it is affixed, or in other words, to give notice who was the producer. This may in many cases be done by a name, a mark, or a device well known but not previously applied to the same article.

" But, though it is not necessary that the word

adopted as a trade-name should be a new creation never before known or used, there are some limits to the right of selection. This will be manifest when it is considered that in all cases where rights to the exclusive use of a trade-mark are invaded, it is invariably held that the essence of the wrong consists in the sale of the goods of one manufacturer or vendor as those of another; and it is only when this false representation is directly or indirectly made that the party who appeals to a court of equity can have relief. This is the doctrine of all the authorities. *Amoskeag Manfg. Co.* v. *Spear*, 2 Sandf. (N. Y.) 599; *Boardman* v. *Britannia Co.*, 35 Conn. 402; *Farina* v. *Silverlock*, 39 Eng. Law & Eq .514. Hence the trade-mark must, either by itself, or by association, point distinctively to the origin or ownership of the article to which it is applied. The reason of that is that unless it does, neither can he who first adopted it be injured by any appropriation or imitation of it by others, nor can the public be deceived. The first appropriator of a name or device pointing to his ownership, or which, by being associated with articles of trade, has acquired an understood reference to the originator, or manufacturer of the articles, is injured whenever another adopts the same name or device for similar articles, because such adoption is in effect representing falsely that the productions of the latter are those of the former. Thus the custom and advantages to which the enterprise and skill of the first appropriator had given him a just right are abstracted for another's use, and this is done by deceiving the public by inducing the public to purchase the goods and manufactures of one person supposing them to be those of another. The trade-mark must, therefore, be distinctive in its original signification, pointing to the origin of the article, or it must have become such by association. And there are two rules which are not to be overlooked. No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured rather than protected, for competition would be destroyed. Nor can a generic name, or name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark and the exclusive use of it be entitled to legal protection. As was said in the well-considered case of *Amoskeag Manfg. Co.* v. *Spear*, supra, the owner of an original trade-mark has an

undoubted right to be protected in the exclusive use of all the marks, forms, or symbols that were appropriated as designating the true origin or ownership of the article or fabric to which they are affixed, but he has no right to the exclusive use of any words, letters, figures, or symbols, which have no relation to the origin or ownership of the goods, but are only meant to indicate their names or quality."

See, also, *McLean* v. *Fleming*, 96 U. S. 245; *Manufacturing Co.* v. *Trainer*, 101 U. S. 54, including the dissenting opinion of Mr. Justice Clifford; *Popham* v. *Cole*, 66 N. Y. 69.

If, then, the use of a trade-mark does not give one the exclusive right to make or sell a given kind of goods, and the essence of the wrong consists in the sale of the goods of one manufacturer or vendor as those of another, can it be said that what is proposed here amounts to an offer to furnish to the cities of Detroit and Cadillac a pavement made by defendants as being a pavement made only by complainant or its representatives? It must be remembered that the proposed pavement cannot be furnished already made, like a machine or an article of merchandise, but it must be constructed where used. The proposal inviting bids does not stop with calling the name of the proposed pavement Bitulithic macadam, but in detail names the materials and proportions thereof which are to go into the pavement and the method of construction. The construction itself must be where the pavement is to be used. Any person has the right to make a pavement according to said specifications. We think there is nothing in what is proposed to be done by defendant, calculated to deceive the municipalities inviting bids, into the belief that defendant was proposing to furnish to them a pavement made only by complainant. To give to a trade-name the effect contended for here would make it much more valuable than a patent for the same article.

The decree is affirmed.

McALVAY, GRANT, BLAIR, and HOOKER, JJ., concurred.