# PUTNAM NAIL CO. v. B. F. DULANEY.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued January 30, 1891—Decided February 23, 1891.
[To be reported.]

1. While a manufacturer will be restrained from selling his own products, as and for those of another, by means of a trade-mark in imitation of the trade-mark of such other person, the mere manufacture and sale of an unpatented article, though made in precise imitation of another manufacturer's product, will not be enjoined.
2. The bronzing of horse-shoe nails cannot constitute a trade-mark; wherefore, a bill averring that the plaintiff had adopted a bronze coating to distinguish a certain grade of nails of its manufacture, and charging that the defendant had imitated the same, to deceive purchasers and pass his goods off for those of the plaintiff, was properly dismissed.

Before PAXSON, C. J., CLARK, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

No. 90 January Term 1891, Sup. Ct.; court below, No. 514 September Term 1889, C. P. No. 3, in Equity.

On October 31, 1889, the Putnam Nail Company filed a bill in equity against B. F. Dulaney, making in substance, as afterwards amended, the following averments:

That the plaintiff was a corporation, organized under the laws of the state of Massachusetts, and had been engaged for many years in the manufacture and sale of horse-shoe nails, and nails of its manufacture had acquired a reputation leading to large sales thereof. About 1874 the plaintiff adopted a method of bronzing a certain kind or quality of the nails made by it, solely for the purpose of distinguishing such nails as of its own manufacture, and to secure a trade-mark by which they might be known and sold in the market; such bronzing not being intended to affect and not affecting the quality or character of the nails on which it was used, but affecting only their external appearance. The bronzing was never known or used in the mechanic arts in connection with horse-shoe nails, or nails of any kind, until adopted and introduced into the trade by the

plaintiff, for the sole purpose of distinguishing its goods.   Since 1874, the plaintiff had continued to use said trade-mark and all nails of the kind referred to had been so bronzed.   They were widely known in the market as " Empire Bronzed " horse-shoe nails, and by certain other names all containing the word " bronze " or " bronzed," and under such names had command-ed an extensive reputation and sale throughout the United States, purchasers being guided to a great extent by the trade-mark adopted by the plaintiff and the bronzing of the nails as aforesaid.

That the defendant, intending to deceive purchasers and de-fraud the public and injure the plaintiff, had been engaged for some time in the sale of horse-shoe nails, not manufactured by the plaintiff, which he had had bronzed and sold as bronzed horse-shoe nails, under the name of " Imperial Bronze," or other names all containing the word "bronze."   They were of in-ferior quality to those bronzed and sold by the plaintiff, and purchasers had been and were deceived and misled into buying the former, in the belief that they were manufactured by the plaintiff.   The use of the device of bronzing and of the said trade-mark by the defendant, was an effort to imitate and sim-ulate the plaintiff's trade-mark ; was adopted by him solely for that purpose and for no other ; in fact, was such an imitation and simulation, and was calculated and intended to deceive and impose upon the public and the plaintiff's customers throughout the country, and had done so ; all which was in fraud of the plaintiff's rights and an injury to its business.

The bill prayed for an injunction ; for the delivery up, to be canceled and destroyed, of all labels, circulars, etc., in fraud and imitation of the plaintiff's trade-mark, and all blocks, plates and stencils from which the same had been printed ; for an ac-count ; for damages ; and for general relief.

The defendant filed a demurrer to the amended bill, assigning in substance the following reasons: (a) That the bill did not show a case entitling the plaintiff to the relief prayed for, or any other relief from a court of equity; (b) that a method of bronzing was not a trade-mark, nor was the " device of bronzing " such a device as that a property right could be ac-quired therein as a trade-mark ; and the words " bronze " and " bronzed," in connection with horse-shoe nails, were mere

words of description or color, and as such the plaintiff could acquire no rights of property therein as trade-marks; (*c*) that the defendant having a right to bronze and sell horse-shoe nails, the court could not draw an inference of fraud from the single fact that he did so, and base a decree thereon.

After argument, a decree was entered, without opinion filed, sustaining the demurrer and dismissing the plaintiff's bill; whereupon the plaintiff took this appeal, assigning the decree sustaining the demurrer, for error.

*Mr. Owen Wister* and *Mr. Francis Rawle* (with them *Mr. S. G. Fisher*), for the appellant:

This constitutes an absolutely clear case for the interposition of a court of equity upon perfectly well-settled principles. Although averments of legal inferences or conclusions are not admitted by a demurrer: Dillon v. Barnard, 21 Wall. 430; yet a specific averment of fraudulent intent, as a fact, is necessarily confessed when the bill is demurred to: Story's Eq. Pl., § 452; Guffing v. Gibb, 2 Black 523; Foote v. Linck, 5 McLean 616.

1. This bill specifically avers that the defendant pirated the plaintiff's business, by making his goods look like the plaintiff's and selling them as such, with the intention of deceiving the public thereby, and that the public were so deceived. The plaintiff admits that it does not have a technical trade-mark, but contends that the jurisdiction in equity does not rest on such an artificial foundation, but on the simple fact of deliberate piracy. We rest upon a principle which has become established in England and the United States by a long line of cases, and can conveniently be stated by quoting the language of the Supreme Court of New York, in Morgan v. Troxell, 89 N. Y. 292 (42 Am. Rep. 294); Cox's Trade-mark Cases, 416: "The law of trade-marks has been gradually expanding so as to meet just such cases. . . . . We deem it thus to be well settled, upon authority, that to justify the interference by injunction of a court of equity, it is sufficient that there is a fraudulent intention of palming off the defendant's goods as those of the plaintiff's, and that such intention is to be carried into execution."

2. In support of this principle, we cite the following English

Arguments.

cases : Knott v. Morgan, 2 Keen 213; Perry v. Truefitt, 6
Beav. 66; Croft v. Day, 7 Beav. 84; Lee v. Haley, 21 L. T.,
N. S., 546; L. R. 5 Ch. Div. 155; 39 L. J. Ch. 284; 22 L. T.,
N. S., 251; Siegert v. Findlater, L. R. 7 Ch. Div. 801; Thor-
ley's Cattle Food Co. v. Massam, 42 L. T., N. S., 851; Lever
v. Goodwin, L. R. 36 Ch. Div. 1. In none of these cases does
the court say to the plaintiff, " Had you a trade-mark? " It
says to the defendant, " You have been passing yourself off for
the plaintiff unfairly, and therefore we are going to stop you."
It is to be noticed how often the English judges emphasize the
fact that exclusive property in a symbol has nothing to do with
their decision. It will be found that the courts in this country
have been more emphatic if possible, as an examination of the
following cases will show : Williams v. Johnson, 2 Bosw. 1;
Gillott v. Esterbrook, 48 N. Y. 374 (8 Am. Rep. 553); s. c.
47 Barb. 455; McLean v. Fleming, 96 U. S. 245; Morgan v.
Schwachofer, 5 Abb. Pr. 265; Sawyer v. Horne, Cox's Trade-
mark Cases, 667; Morgan v. Troxell, 89 N. Y. 292 (42 Am.
Rep. 294); Trask Fish Co. v. Wooster, 28 Mo. App. 408;
Moxie Nerve Food Co. v. Baumbach, 32 Fed. R. 205; Moxie
Nerve Food Co. v. Beach, 33 Fed. R. 248; see also: Wood-
ward v. Lazar, 21 Cal. 448 (82 Am. Dec. 751); Milner v.
Reed, Cox's Trade-mark Cases, 328; Wotherspoon v. Currie,
L. R. 5 H. L. 508; Thompson v. Montgomery, L. R. 41 Ch.
Div. 35.

3. Laughman's App., 128 Pa. 1, is not against us, as it re-
lates solely to the name of a natural product: Metcalf v. Brand,
86 Ky. 346. Attention is called to the fact that horse-shoe
nails are sold by the pound, weighed out to the buyer from
the keg by a retailer, and that the coloring of these nails in a
novel manner was a reasonable practice and the only sufficient
way of distinguishing them. Nails are physically incapable of
labeling. We beg attention also to the case of Putnam Nail
Co. v. Bennett, 43 Fed. R. 800, which was precisely identical
with the present case, except in the name of the defendant,
and a demurrer to the bill was overruled by Mr. Justice BRAD-
LEY and Mr. Circuit Judge McKENNAN. Equity jurisdiction
in all trade-mark cases rests ultimately on the eighth command-
ment, the principle of which contains and surrounds the two
species of cases of which the technical trade-mark is one, and

the infringement of a trade reputation is the other. In the former, copying a technical trade-mark is enough; even though it be done innocently or unknowingly, the defendant will be enjoined. In the other line of cases, in which the defendant imitates goods with the intention of pirating, no technical trade-mark is necessary, and to the latter class the case at bar fairly belongs.

*Mr. Albert B. Weimer* (with him *Mr. Frederick M. Leonard*), for the appellee:

1. The claim of the plaintiff to a trade-mark in "a method of bronzing" horse-shoe nails, falls within no accepted definition of a trade-mark: Amoskeag Mfg. Co. v. Trainer, 101 U. S. 51; Laughman's App., 128 Pa. 1; Hostetter v. Fries, 17 Fed. R. 622; Ex parte Landreth, 31 Off. Gaz. 1441. The court will take judicial notice of the character and use of bronzing, and of the fact that it is commonly applied to iron and steel as a matter of utility, and produces a difference in the kind or quality of the article by giving a high degree of "finish" and protecting against rust: Brown v. Piper, 91 U. S. 37; Luke v. Calhoun Co., 52 Ala. 115; Reed v. Lawrence, 29 Fed. R. 915.

2. An element of commercial utility, or an element which enters into the structure of an article, cannot be a trade-mark at common law: Browne on Trade-marks, § 138; Delaware & H. Can. Co. v. Clark, 13 Wall. 311; Dausman etc. Tobacco Co. v. Ruffner, 15 Off. Gaz. 559; Lorillard v. Pride, 28 Fed. R. 434; Harrington v. Libby, 14 Blatchf. 128; Cable Twist Tobacco Case, Browne on Trade-marks, 188; Ex parte Landreth, 31 Off. Gaz. 1441; White v. Schlect, 9 W. N. 77; Mumm v. Kirk, 40 Fed. R. 589; In re Kane & Co., 9 Off. Gaz. 105. Color, apart from a name or device, cannot be the subject matter of a trade-mark: High on Inj., 830; Browne on Trade-marks, §§ 109, 271; Fleischman v. Starkey, 25 Fed. R. 127; Ex parte Landreth, 31 Off. Gaz. 1441; Phila. Novelty Co. v. Rouss, 40 Fed. R. 585; Fairbanks v. Jacobus, 14 Blatchf. 20; Hanson's Trade-Marks, L. R. 38 Ch. Div. 112.

3. A trade-mark, adopted by a manufacturer for his goods, must designate the true ownership or origin of the goods, to entitle him to protection in its exclusive use: Stokes v. Land-

Arguments.

graff, 17 Barb. 608; Dixon Crucible Co. v. Guggenheim, 7 Phila. 408; Fetridge v. Wells, 4 Abb. Pr. 144; Corwin v. Daley, 7 Bosw. 222; Amoskeag Mfg. Co. v. Spear, 2 Sandf. 599; White v. Schlect, 9 W. N. 77; Ferguson v. Davoll Mills, 7 Phila. 253; Lichtenstein v. Goldsmith, 37 Fed. R. 359. A property right cannot be acquired in a device, adopted as a trade-mark to distinguish a certain grade of nails from other grades made by the same person: Royal Baking P. Co. v. Sherrell, 93 N. Y. 331 (45 Am. Rep. 229); Amoskeag Mfg. Co. v. Trainer, 101 U. S. 51; Lawrence Mfg. Co. v. Manufacturing Co., 31 Fed. R. 776; India Rubber Co. v. Rubber Co., 45 N. Y. 258; Gillott v. Esterbrook, 48 N. Y. 374 (8 Am. Rep. 553).

4. A mere general description by words in common use, of a kind of article, or its nature or qualities, cannot of itself be the subject of a trade-mark :* Del. & H. Canal Co. v. Clark, 13

---

* The brief filed for the appellee collected in the following table cases in which protection was refused for descriptive words as trade-marks:

| NAME. | CASE. |
|---|---|
| Lake Cylinder (glass) | Stokes v. Landgraff, 17 Barb. 608. |
| Schiedam Schnapps | Wolfe v. Goulard, 18 How. Pr. 64. |
| Club House Gin. | Corwin v. Daly, 7 Bosw. 222. |
| Paraffine Oil | Young v. Macrae, 9 Jur., N. S., 322. |
| Night-blooming Cereus | Phalen v. Wright, 5 Phila. 464. |
| Old London Dock Gin | Benninger v. Wattles, 28 How. Pr. 206. |
| Liebig's Extract | Liebig's Extract Co. v. Hanbury, 17 L. T., N. S., 298. |
| Ferro-phosph. Elixir | Caswell v. Davis, 58 N. Y. 223. |
| Dessicated Codfish | Town v. Stetson, 3 Daly 53. |
| Lackawanna Coal | Del. & H. Canal Co. v. Clark, 13 Wall. 311. |
| Antiquarian Bookstore | Choynski v. Cohen, 39 Cal. 501. |
| Mammoth Wardrobe | Gray v. Koch, 2 Mich. N. P.119. |
| Macassar Oil | Rowland v. Brudenbach, 1 Trade-marks, 261. |
| Porous Plasters | In re Brandreth, 9 Ch. D. 618. |
| Iron-Stone (water-pipes) | In re Rader, 13 Off. Gaz. 596. |
| Crack-Proof (India-rubber) | In re Goodyear Rubber Co., 11 Off. Gaz. 1062. |
| Cherry Pectoral | Ayer v. Rushton, 7 Daly 9. |
| Rye & Rock | Van Beil v. Prescott, 46 N. Y. 542. |
| Invigorator Spring Bed | Ex parte Heyman, 18 Off. Gaz. 922. |
| Railway Time-Keeper | Ex parte Strasburger, 20 Off. Gaz. 155 |

Arguments.

Wall. 311; Ex parte Heyman, 18 Off. Gaz. 922; Larrabee v. Lewis, 67 Ga. 562 (44 Am. Rep. 735). Nor will a court of equity restrain a person from using a device, on the ground that it infringes the plaintiff's trade-mark, unless it is so similar in appearance that any person, with such reasonable care and observation as the public generally are capable of using and may be expected to exercise, would mistake the one for the other: Gilman v. Hunnewell, 122 Mass. 139; Desmond's App., 103

| | |
|---|---|
| Rheumatic Liniment . . | Marshall v. Pinkham, 52 Wis. 497. |
| Snow-Flake (bread) . . . | Larrabee v. Lewis, 67 Ga. 562. |
| Straight Cut . . . . | Ginter v. Kenny Tobacco Co., 12 Fed. R. 782. |
| Albany Beef (sturgeon) . . | Ex parte Ames, 23 Off. Gaz. 344. |
| Cresylic Ointment . . . | Carbolic Soap Co. v. Thompson, 25 Fed. R. 625. |
| Health-Preserving (corsets) . | Ball v. Siegel, 116 Ill. 137. |
| Sweet Caporal . . . | Hornbustel v. Kenney, 52 N. Y. Sup. Ct. 41. |
| Astral (oil) . . . . | Pratt Ref. Co. v. Astral Ref. Co., 27 Fed. R. 492. |
| Liquid Glue . . . . | Russia Cement Co. v. Reed, 128 Mass. 139. |
| Cough-Remedy . . . . | Gilman v. Hunnewell, 122 Mass. 139. |
| Samaritan . . . . | Desmond's App., 103 Pa. 126. |
| Royal . . . . . | Royal Baking P. Co. v. Sherrell, 93 N. Y. 331. |
| Indurated Fibre . . . | Indurated Fibre Co. v. Amoskeag Indurated Fibre Co., 37 Fed. R. 695. |
| Taffy Tolu . . . . | Colgan v. Danheiser, 35 Fed. R. 150. |
| Acid Phosphate . . . | Rumford Chemical Works v. Muth, 35 Fed. R. 524. |
| International Bank . . . | Koehler v. Sandars, 48 Hun 48. |
| Selected Shore Mackerel . | Trask Fish Co. v. Wooster, 28 Mo. App. 408. |
| Iron Bitters . . . . | Brown Chem. Co. v. Stearns, 37 Fed. R. 360. |
| Reverse (game) . . | Waterman v. Ayres, L. R. 39 Ch. D. 29. |
| Goodyear Rubber . . . | Goodyear's India-Rubber Glove Mfg. Co. v. Rubber Co., 128 U. S. 598. |
| Herbaline . . . . | Humphries v. Taylor Drug Co., 59 L. T. 820. |
| Sonman . . . . . | Laughman's App., 128 Pa. 1. |

Pa. 126; Liggett & M. Tobacco Co. v. Finzer, 128 U. S. 182; Evans v. Van Leer, 32 Fed. R. 153.

5. If the plaintiff has no valid trade-mark, and the defendant or any other person, has the right to bronze horse-shoe nails, there can be no fraud or deception on the public in exercising such a right: Mumm v. Kirk, 40 Fed. R. 589; Goodyear's India-Rubber Co. v. Rubber Co., 128 U. S. 598; Lorillard v. Pride, 28 Fed. R. 484. The few cases in which injunctions were said to be awarded to prevent fraud on the public, can be justified only upon the ground that the labels and packages protected were real trade-marks. Moreover, the intent with which a lawful imitation was made, is immaterial: Laughman's App., 128 Pa. 1. And a demurrer does not admit a charge of fraud: Flewellen v. Crane, 58 Ala. 627; 1 Daniell's Ch., 542; Penny v. Jackson, 85 Ala. 67; Pullman's Pal. Car Co. v. Railway Co., 115 U. S. 587. This case is ruled by Laughman's App., 128 Pa. 1, and Desmond's App., 103 Pa. 126.

OPINION, MR. CHIEF JUSTICE PAXSON:

The court below sustained the defendant's demurrer, and dismissed the plaintiff's bill. It was evidently intended as a trade-mark bill. Yet the case lacks every element of a trade-mark. There is no trade-mark shown nor alleged which it is charged the defendant has pirated. On the contrary, the bill alleges that the plaintiff manufactures a peculiar kind of horse-shoe nail. It is known to the trade as a bronzed nail, being covered with a coating of bronze. It is not alleged they are any better for being bronzed, but they are more popular, and sell more readily. The bill charges that the defendant is selling a precisely similar nail; that it is bronzed like those of plaintiff's, to deceive purchasers and induce them to purchase them as plaintiff's nails. The defendant has not imitated its label, for it has none. He has not even imitated the plaintiff's manner or style of putting up its packages. There is nothing beyond the mere averment that he makes a similar nail.

We have never yet carried the doctrine of trade-marks to the extent claimed for it by the plaintiff. We have never hesitated to restrain the imitation of a trade-mark, when the facts justified it. We are now asked to go one step further, and protect the manufacture of the article itself. This we do not see

Syllabus.

our way clear to do. The manufacture of a particular article can only be protected by a patent. The law in regard to trade-marks should not be pushed to the extent of interfering with manufactures. A man may make any article he pleases that is not protected by a patent. He may make a horse-shoe nail, or any other unpatented article, precisely like that of any other manufacturer; he may imitate it so perfectly that the one may be mistaken for the other, but he may not sell his own article as and for that of another, by means of a trade-mark in imitation of the trade-mark of such other person. Some of the cases cited go so far as to restrain one manufacturer from imitating the style, form, and size of the packages of other manufacturers. We need not discuss those cases, as they are not applicable. Our attention has not been called to any case which is authority for plaintiff's claim. We think judgment was properly entered for the defendant upon the demurrer.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.

On May 4, 1891, a motion for a re-argument was refused.