# IN RE AMERICAN CIRCULAR LOOM COMPANY (1).

## TRADEMARKS.

1. The office of a trademark, in a legal sense, is to point out distinctly the origin or ownership of the article to which it is affixed; or, in other words, to give notice who was the producer. Words, letters, or symbols which indicate merely the quality of the goods to which they are affixed cannot be appropriated as trademarks.

2. A trademark cannot be registered, of which color, unconnected with some symbol or design, is the essential feature.

3. A trademark consisting of a section of a tube having a sparkling or mottled appearance upon its outside surface, caused by the impression thereon of flakes of mica, is not registerable. The effect of granting registration to such a trademark, as far as it could have any effect at all, would be to give the applicant a monopoly of conduits or tubular coverings of flake-mica composition.

No. 377.   Submitted November 20, 1906.   Decided December 4, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for registration of a trademark.                              *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Charles F. Perkins, Mr. Arthur W. Harrison, Mr. Everett N. Curtis,* and *Mr. Wm. S. Hodges* for the appellant.

*Mr. Fairfax Bayard* for the Commissioner of Patents.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The American Circular Loom Company appeals from the refusal of registration of a trademark for insulating tubes or tubular coverings for electric wires, described as follows: "The trademark is shown in the accompanying drawing, and consists of flakes of mica impressed in or otherwise applied to the external surface of an insulating tube or tubular coverings for electric wires."

The articles of manufacture, as shown by specimen tube sections submitted to the office examiner, consist of a fibre spiral, a covering of fibre and tape, a protective cotton tube, and an outer covering of the insulating tube. The applicant states that the trademark is usually applied by "pressing small flakes of mica against the surface of an insulating tube or tubular covering while the said surface is in a somewhat soft and yielding condition, the flakes being partially imbedded in and caused to adhere to the surface of the tube." The trademark is represented also as "displayed on the goods by attaching thereto a tag having thereon a printed representation of sparkling flakes or scales, or a picture of a section of tubing."

Registration was refused by the examiner on the ground that it "is not a distinctive mark indicative of origin and ownership, but a mere representation of the goods;" that is to say, of their character or quality.

Mica is itself an insulating material or substance, and the specimen sections of the tubes appear to the ordinary observer to have a thin covering of it, sparkling more at some points than at others. The trademark drawing or print shows something like a similar mica covering, with a number of larger sparkling spots distinct from each other.

Regarding this as intended to represent, in probably an exaggerated form, what is shown on the tubes themselves, we agree with the examiner that permission to register this trademark would be, so far as registration could have any effect, to give the applicant a monopoly of conduits or tubular coverings

of flake-mica composition. The office of a trademark, in a legal sense, is to point out distinctively the origin or ownership of the article to which it is affixed; or, in other words, to give notice who was the producer. Words, letters, or symbols which indicate merely the quality of the goods to which they are affixed cannot be appropriated as trademarks. *Delaware & H. Canal Co.* v. *Clark,* 13 Wall. 311, 322, 20 L. ed. 581, 583; *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.* 138 U. S. 537, 547, 34 L. ed. 997, 1003, 11 Sup. Ct. Rep. 396. This doctrine, in our opinion, was correctly applied to the conditions of this case by the Commissioner in the following words:

"Custom and reason require that a trademark shall have an existence so distinct from the goods to which it is applied that it will be readily recognized by the public and by purchasers as an arbitrary symbol adopted to authenticate origin. The surface effect which the applicant calls his trademark is not so clearly distinct from the article upon which it appears as to be readily recognizable as an arbitrary symbol for this purpose, and, in my opinion, it would not be so recognized by those not specially informed."

It is earnestly contended for the appellant that mica is not in fact used, or intended to be represented as used, to form any part of the insulating covering of the tubes, and that the sole purpose of its use, illustrated by the drawing, is to seek protection "for the distinctive appearance obtained by placing bright scales on a dark background." Viewed in this light alone, we are of the opinion that registration was properly denied, for it is nothing more, substantially, than an ingenious attempt to obtain a trademark of which color, unconnected with some symbol or design, is the essential feature. *A. Leschen & Sons Rope Co.* v. *Broderick & B. Rope Co.* 201 U. S. 166, 171, 50 L. ed. 710, 712, 26 Sup. Ct. Rep. 425. The trademark was claimed in that case by a rope manufacturer, and consisted of a red or other distinctively colored streak applied or woven into a wire rope. It was also stated that the color of the streak might be varied at will, so long as it is distinctive from the color of the body of the rope, though it was usually applied by painting

one strand of the rope red. In delivering the opinion of the court, Mr. Justice Brown said: "Certainly a trademark could not be claimed of a rope, the entire surface of which was colored; and if color be made the essential feature, it should be so defined or connected with some symbol or design that other manufacturers may know what they may safely do." After discussing and pointing out the great breadth of the trademark as described, it was further said: "Whether mere color can constitute a valid trademark may admit of doubt. Doubtless it may be, if it be impressed in a particular design, as a circle, square, triangle, a cross, or a star. But the authorities do not go farther than this. In the case of *Re Hanson's Trademark,* L. R. 37 Ch. Div. 112, in which a trademark was claimed for a red, white, and blue label, in imitation of the French tri-color, for French coffee, it was held not entitled to registration under the English statute, which requires a trademark to be distinctive in order to be valid. The court remarked as follows: 'It is the plain intention of the act that, where the distinction of a mark depends upon color, that it will not do. You may register a mark which is otherwise distinctive, in color, and that gives you the right to use it in any color you like; but you cannot register a mark of which the only distinction is the use of a color, because practically, under the terms of the act, that would give you a monopoly of all the colors of the rainbow.' "

The English case cited and quoted above arose under an act which provided for the registration of a trademark in color. See also *Putnam Nail Co.* v. *Dulaney,* 140 Pa. 205, 11 L.R.A. 524, 23 Am. St. Rep. 228, 21 Atl. 391; *Mumm* v. *Kirk,* 40 Fed. 589.

For the reasons given, the decision will be affirmed.

The clerk is directed also to certify this decision to the Commissioner of Patents as the law provides.          *Affirmed.*