DANIEL v. ELECTRIC HOSE & RUBBER CO. *

(Circuit Court of Appeals, Third Circuit. January 27, 1916. On Petition for Reargument, April 14, 1916.)

No. 2053.

TRADE-MARKS AND TRADE-NAMES ⚙⟶11—FORM OF ARTICLE—EFFECT OF EXPIRED PATENT.

Where a corrugated rubber hose as a new article of manufacture was patented in 1872, and it was shown that the corrugations were useful and functional, on the expiration of the patent the right to make such hose became common to all, and no one manufacturer, by making hose with corrugations for any length of time, could convert the article itself into a trade-mark, and thereby acquire the exclusive right to make it in perpetuity.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 15; Dec. Dig. ⚙⟶11.] ·

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Suit in equity by the Electric Hose & Rubber Company against Charles A. Daniel, individually and trading as the Quaker City Rubber Company. Decree for complainant, and defendant appeals. Reversed.

The following is the opinion of Thompson, District Judge, on final hearing:

------

⚙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
* Rehearing denied.

The plaintiff, Electric Hose & Rubber Company, is engaged in the business of the manufacture and sale of rubber hose as the successor of the Chicago Electric Wire Company, to which on August 3, 1897, letters patent No. 587,545 were issued as assignee of Henry B. Cobb, inventor of a method of manufacturing rubber hose in long lengths, consisting in forming, about a tube of alternate layers of rubber and fabric, an inelastic mold within which the product was vulcanized and the mold then removed. The Chicago Electric Wire Company assigned all its right to the manufacture and sale of hose to the Chicago Electric Hose Company, which is the plaintiff herein, its name having been changed, by amendment to its charter, to Electric Hose & Rubber Company. To distinguish the hose invented by Cobb, the Chicago Electric Wire Company adopted a device consisting of external longitudinal corrugations, and that device, as a distinguishing mark of hose made under the Cobb invention, was continued down to the filing of the bill on December 2, 1913. The hose so marked by corrugations was known to the trade as "Electric" hose, and from 1897 until some time in 1907 was exclusively made and sold by the plaintiff and its predecessors. The defendant up to 1912 was a customer of the plaintiff, and purchased for his trade the plaintiff's "Electric" hose having the external longitudinal corrugations; also hose manufactured by the plaintiff with a smooth exterior surface. The plaintiff manufactured and sold its corrugated hose exclusively under its own name, but manufactured the smooth hose for the defendant and others and sold it to them with their respective names impressed upon it.

Marking the hose by longitudinal corrugations was not an element of the Cobb patent. It was recognized generally by the trade and public as an attractive feature in the appearance of the hose and as a distinguishing mark of the so-called "Electric" hose. The corrugated hose had obtained a wide popularity and was successfully sold to the trade and to the public. During the period from 1907 down to the filing of the bill, several competitors of the plaintiff produced hose with corrugated marking, but, upon demand by the plaintiff, adopted spiral or longitudinal bands or other distinguishing features with the manufacturer's name at close intervals, in order that the hose might not be mistaken for that of the plaintiff.

The defendant had unsuccessfully endeavored for a number of years to obtain from the plaintiff corrugated hose with the defendant's trade-name upon it. Thereupon the defendant, finding that there was a large demand for the corrugated hose, obtained through his employé, Frank R. Neff, a patent, as assignee of Neff, having the following claim: "A hose comprising an outer covering of rubber having longitudinally extending closely spaced ribs forming corrugations extending longitudinally of the hose, said ribs terminating in solid annular sections, equally spaced along said hose, the outer faces of said ribs and the outer faces of said annular sections being substantially in alinement." In the specification of the Neff patent, it was set out: "By the above construction, it will be therefore noted that a hose is formed wherein the rubber outer surface is so shaped as to greatly strengthen the hose against lateral strains and to increase the life of the hose as to surface wear, and furthermore a visible indication is provided whereby definite lengths of hose may be quickly determined."

After the Neff patent, No. 1,026,598, was issued May 14, 1912, the defendant began to manufacture a long-length hose by another method than that covered by the Cobb patent. This hose contained longitudinal corrugations and was made in close imitation of that sold by the plaintiff. At spaces of one foot, however, the longitudinal ribs, in accordance with the claim of the Neff patent, terminated in an uncorrugated annular section about one-eighth of an inch in width. While the specification of the patent claims that the annular sections strengthen the hose against lateral strains, increase its life as to surface wear, and provide a visible indication for quickly determining definite lengths of the hose, the purpose of the defendant in causing the patent to be obtained by Neff was to produce a hose which he could manufacture and sell so closely imitating that of the plaintiff as to derive from its production the advantage of the demand in the market for the plaintiff's corrugated hose. The defendant has accordingly placed upon the market and sold a hose made

under the Neff patent with his trade-name, "Quaker City Rubber Co.," and the words, "Ringmeter Reg. U. S. Pat. Off. Philadelphia, Pa. U. S. A.," placed upon it at irregular intervals.

The defendant has set up as a defense the Mayall patent No. 125,596, issued April 9, 1872, for improvement in vulcanized India rubber hose or tubing. As described in the specification, this invention is directed to the production of vulcanized India rubber hose or tubing formed with an ornamental pattern or configuration in relief upon its exterior. The method consists of forming an ornamental pattern or configuration in relief on the rubber while it is passing in sheet form from the calender rolls, using for this purpose a pattern roll pressing up against one of the calenders, so that the rubber sheet passes between the pattern roll and the calender, and is consequently impressed with the configuration or ornamental design formed in intaglio, or engraved in the pattern roll. The claim is as follows: "As a new manufacture, vulcanized India rubber hose or tubing, made with fluting or other ornamental configuration in relief upon its exterior, substantially in the manner herein described."

The Mayall patent is clearly for a method of manufacturing hose or tubing with any sort of fluting or ornamental configuration upon it, and is not confined to the fluting which appears in the drawings and is mentioned in the claim and in the specification. There is no evidence that Mayall, or any one deriving rights under him as licensee or assignee, used the process described in his invention, nor is there any evidence that any one put into use the external longitudinal corrugations upon hose prior to their adoption by the plaintiff in 1897. Mayall does not claim any structural value in the fluting. While the evidence of structural value in the device is somewhat conflicting, it is found as a fact, from the weight of the evidence upon the record here presented, that the corrugations add no structural value to the product, and that their use is merely for ornamentation. The evidence intended to show structural advantage from the corrugations, resulting in what was termed at the hearing "non-kinkability," and the quality of preventing abrasion by friction, is not convincing. The opinions of witnesses that the corrugations were useful in preventing kinking and abrasion were not based upon actual tests made in comparison with smooth-surfaced hose, except in the case of the defendant's witness called as an expert. Tests made by him were upon sections of hose produced by the defendant for the purpose. Tests of such isolated specimens cannot fairly represent results upon which opinions of value can be based.

The corrugations having no structural value, and there being no evidence of the use of the corrugations under the Mayall patent, or of their appropriation and user as a trade-mark for rubber hose of others, prior to the appropriation and user by the plaintiff, the invention of Mayall in 1872 of a method by which hose may be fluted is not material as affecting the plaintiff's right to its use as an indicium of its product.

The validity of a trade-mark does not depend upon either novelty, invention, or discovery, but is founded upon mere priority of appropriation and user as a trade-mark for a particular class of goods. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997. Abandoned trade-marks may be appropriated by others and become their exclusive property, even as against the original user. Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526.

The adoption of the corrugations by the plaintiff's predecessor occurred in 1897, years subsequent to the expiration of the Mayall patent in 1889. Upon its expiration, the method and whatever incidents appertained thereto became open to the public, subject to appropriation and user by any one. Unless the plaintiff's predecessor adopted it to confuse its product with that of others, it was entitled, even though Mayall had conceived fluting upon hose in 1872, to adopt longitudinal corrugation as indicating the origin of its hose.

The defendant has shown that, prior to the adoption of corrugation by the plaintiff, corrugated tubing was manufactured and sold by other rubber manufacturers. The evidence shows, however, that rubber hose and rubber tubing are entirely separate and distinct articles in commerce and in domestic

use, and are so recognized generally by the trade and the public. They are used for entirely separate and distinct purposes, and there is no confusion or possibility of mistaking the one for the other. When the plaintiff adopted its device therefor, it was unused by the trade in the manufacture or marketing of rubber hose.

The defendant contends, however, that the Cobb patent having expired in August, 1914, and the patented hose having been known to the trade and the public by the longitudinal corrugations adopted by the plaintiff as indicating the origin and manufacture of its hose, the monopoly in the corrugated marking of the hose became public property upon expiration of the patent and passed to the public along with the patented method. The general principle of law underlying this contention is too well settled to admit of contradiction or discussion, and the question, therefore, arises as to whether, upon abandonment to the public of the plaintiff's patent, the defendant became entitled under the facts of this case to the appropriation of the plaintiff's device, which had during the life of the patent indicated the origin of the hose manufactured by the plaintiff. With the limitation that the defendant must not so use the device as to deprive the plaintiff of its rights or to deceive the public, the defendant, upon the expiration of the patent, was at full liberty to manufacture under the method of the expired patent, and to appropriate any device or form in connection with which the patented article had been made which was designative in a generic manner of the distinctive style of hose manufactured by the plaintiff.

In the present case the defendant is not manufacturing its hose in accordance with the plaintiff's patent, but is using another method, which permitted it, prior to the expiration of the patent, to manufacture hose in long lengths. Its purpose in adding the corrugations was to closely imitate the plaintiff's patented hose under the guise of the Neff patent. The hose produced by the defendant is calculated to deceive the public as to the identity of the article produced by him, and, although the plaintiff's patent has expired, it is entitled to be protected from any injury arising from such imitation produced with the deliberate intent of deceiving the public by passing off the defendant's hose for that manufactured by the plaintiff. While the defendant is not to be prevented from constructing long-length hose with corrugations, still he cannot be permitted to do any act the necessary effect of which would be to imitate or to make any one believe that the hose which he manufactures and sells is manufactured by the plaintiff; neither has he the right to use any device which may be properly considered a trade-mark, so as to induce the public to believe that the hose has been manufactured by the plaintiff. Singer Manufacturing Co. v. June Manufacturing Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118.

The defendant's contention, however, is that it is protected by the Neff patent. A reading of the entire testimony of the defendant leads to the conclusion that this patent was frivolously obtained by him as a makeshift, for the purpose of putting upon the market an imitation of the hose made and sold by the plaintiff under cover of the structural utility asserted in the Neff specification and claim by reason of the addition to the plaintiff's corrugations of the annular band. While the record in the case establishes the fact that longitudinal corrugations add no structural value or utility to the hose, the presumption arising from the grant of the patent that corrugated hose with the annular band has the advantage over corrugated hose without such band disclosed by the specification is unrebutted, and the defendant is entitled, until the validity of his patent is made the subject of successful direct attack, to manufacture hose under the method disclosed in accordance with his patent. It is entirely possible, however, for him to manufacture hose with such distinctive markings as will preclude the probability of his hose being passed off as that of the plaintiff. To that extent the plaintiff should be protected in equity.

A decree will be entered in favor of the plaintiff and against the defendant for an injunction in accordance with this opinion and for an accounting for profits and damages.

Joseph C. Fraley and Henry N. Paul, Jr., both of Philadelphia, Pa., for appellant.

William W. Porter and Porter, Foulkrod & McCullagh, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON and McPHERSON, Circuit Judges, and BRADFORD, District Judge.

BUFFINGTON, Circuit Judge.   In the court below the Electric Hose & Rubber Company, a corporation and citizen of Delaware, filed this bill against Charles A. Daniel, who was trading as the Quaker City Rubber Company, a citizen of Pennsylvania, charging him with unfair competition and violating its trade-mark.   The court, in its opinion as set forth above, sustained complainant's contention and entered a decree:

"That the use of external longitudinal corrugations in the sale of rubber hose * * * is a good and valid trade-mark to the plaintiff, and is the sole and exclusive property of the plaintiff," and "that the defendant has occasioned unfair trade competition by manufacturing and selling rubber hose corrugated longitudinally."

From such decree defendant took this appeal.

Stripped of incidental matters, the underlying question in this case is whether the longitudinal corrugations on rubber hose can be made a trade-mark monopoly.   The proofs show that on April 9, 1872, patent No. 125,596 was granted to Thomas J. Mayall for an improvement in vulcanized rubber tubings.   In his specification Mayall stated that:

"Tubing of this kind has never, so far as my knowledge extends, been hitherto made, owing, undoubtedly, to the difficulty, or rather impossibility, of preserving the external pattern or ornamental configuration during the several processes at present employed in order to vulcanize and finish hose or tubing."

He disclosed a method of making such hose or tubing, and a claim was allowed him, as follows:

"As a new manufacture, vulcanized India rubber hose or tubing, made with fluting or other ornamental configuration in relief upon its exterior, substantially in the manner herein described."

Accompanying his specification, his corrugated hose was shown by the accompanying drawing:

It goes without saying that at the expiration of Mayall's patent, in 1889, the public acquired the right to make such fluted hose.   The defendant has availed himself of that right, and has embodied Mayall ribs or longitudinal corrugations in hose he makes under patent No. 1,026,598, granted to Neff on May 14, 1912.   The single claim of that patent is:

"A hose comprising an outer covering of rubber having longitudinally extending closely spaced ribs forming corrugations extending longitudinally of

the hose, said ribs terminating in solid annular sections, equally spaced along said hose, the outer faces of said ribs and the outer faces of said annular sections being substantially in alinement."

The hose of Neff's patent has, it will be observed, the longitudinal fluting of Mayall, and in addition certain spaced annular rings at cross-angles thereto. Its contour is shown in the accompanying illustrations taken from Neff's patent:

Under these facts, the burden is on the plaintiff to show by what means the defendant or any other hose manufacturer is to be deprived of the right to make corrugated hose, which right accrued to the public when Mayall's patent expired. The pertinent facts on which the plaintiff bases its alleged right we extract from the opinion of the court below, as follows:

"The plaintiff, Electric Hose & Rubber Company, is engaged in the business of the manufacture and sale of rubber hose as the successor of the Chicago Electric Wire Company, to which on August 3, 1897, letters patent No. 587,545 were issued as assignee of Henry B. Cobb, inventor of a method of manufacturing rubber hose in long lengths, consisting in forming, about a tube of alternate layers of rubber and fabric, an inelastic mold within which the product was vulcanized and the mold then removed. The Chicago Electric Wire Company assigned all its right to the manufacture and sale of hose to the Chicago Electric Hose Company, which is the plaintiff herein, its name having been changed, by amendment to its charter, to Electric Hose & Rubber Company. To distinguish the hose invented by Cobb, the Chicago Electric Wire Company adopted a device consisting of external longitudinal corrugations, and that device, as a distinguishing mark of hose made under the Cobb invention, was continued down to the filing of the bill on December 2, 1913. The hose so marked by corrugations was known to the trade as 'Electric' hose, and from 1897 until some time in 1907 was exclusively made and sold by the plaintiff and its predecessors. * * * Marking the hose by longitudinal corrugations was not an element of the Cobb patent. It was recognized generally by the trade and public as an attractive feature in the appearance of the hose

and as a distinguishing mark of the so-called 'Electric' hose. The corrugated hose had obtained a wide popularity and was successfully sold to the trade and to the public. During the period from 1907 down to the filing of the bill, several competitors of the plaintiff produced hose with corrugated marking, but, upon demand by the plaintiff, adopted spiral or longitudinal bands or other distinguishing features with the manufacturer's name at close intervals, in order that the hose might not be mistaken for that of the plaintiff. * * * After the Neff patent, No. 1,026,598, was issued May 14, 1912, the defendant began to manufacture a long-length hose by another method than that covered by the Cobb patent. This hose contained longitudinal corrugations and was made in close imitation of that sold by the plaintiff. At spaces of one foot, however, the longitudinal ribs, in accordance with the claim of the Neff patent, terminated in an uncorrugated annular section about one-eighth of an inch in width. While the specification of the patent claims that the annular sections strengthen the hose against lateral strains, increase its life as to surface wear, and provide a visible indication for quickly determining definite lengths of the hose, the purpose of the defendant in causing the patent to be obtained by Neff was to produce a hose which he could manufacture and sell so closely imitating that of the plaintiff as to derive from its production the advantage of the demand in the market for the plaintiff's corrugated hose. The defendant has accordingly placed upon the market and sold a hose made under the Neff patent with his trade-name, 'Quaker City Rubber Co.,' and the words, 'Ringmeter Reg. U. S. Pat. Off. Philadelphia, Pa. U. S. A.,' placed upon it at irregular intervals. * * * There is no evidence that Mayall, or any one deriving rights under him as licensee or assignee, used the process described in his invention, nor is there any evidence that any one put into use the external longitudinal corrugations upon hose prior to their adoption by the plaintiff in 1897. * * * The adoption of the corrugations by the plaintiff's predecessor occurred in 1897, years subsequent to the expiration of the Mayall patent in 1889. Upon its expiration, the method and whatever incidents appertained thereto became open to the public, subject to appropriation and user by any one. Unless the plaintiff's predecessor adopted it to confuse its product with that of others, it was entitled, even though Mayall had conceived fluting upon hose in 1872, to adopt longitudinal corrugation as indicating the origin of its hose."

The court further found that the corrugations of hose had no structural value, and held that:

"There being no evidence of the use of corrugations under the Mayall patent, or of their appropriation and user as a trade-mark for rubber hose of others, prior to the appropriation and user by the plaintiff, the invention of Mayall in 1872 of a method by which hose may be fluted is not material as affecting the plaintiff's right to its use as an indicium of its product."

In that regard we are of opinion the court erred. In the first place, the evidence clearly shows the corrugations of the hose are of structural value. In that regard the proof of several witnesses satisfied us that the corrugations enable the hose to be better made, to be made stronger, that such hose lasts longer and minimizes kinking. In the next place, the patent of Mayall was not for a method of fluting a hose, but it was for the fluted hose or tubing as a new article of manufacture; the method disclosed being only the statutory requirement of illustrating how the new article could be made. The testimony being clear that the longitudinal corrugations on the tube are useful and functional, the authorities (Marvel v. Pearl, 133 Fed. 160, 66 C. C. A. 226; Diamond Match Co. v. Saginaw Match Co., 142 Fed. 727, 74 C. C. A. 59; Globe Co. v. Macey, 119 Fed. 996, 56 C. C. A. 304) are clear that such useful features are common property, may be made

by any manufacturer of such an article, and cannot be appropriated as a trade-mark. Where the article itself is one which any one of common right may make, no person by making that article for any period of time—no matter for how long—can convert that article itself into a trade-mark and thereby acquire an exclusive right to make it in perpetuity. To allow this would be to destroy the 17-year limitation of the patent system. The purpose of a trade-mark is, as its name signifies, to provide a mark for an article in which one trades. It is the evidence of the article's genuineness, but is not the article itself.

Applying these principles to the case in hand, it is clear that plaintiff could never acquire an exclusive right to make longitudinally corrugated hose. That right became a public one on the expiration of Mayall's patent, open alike to plaintiff and defendant. The plaintiff exercised that right, called its product electric hose, and has established a valuable trade. The defendant has also exercised its right to make longitudinally corrugated hose. These it has marked with its own name and with the word "Ringmeter" as a registered trade-mark. There is no proof of any confusion of goods, no proof that defendant sold its hose to any one as the plaintiff's hose, or that any one purchased it thinking he was buying the plaintiff's goods. Indeed, in the last analysis the whole case of the plaintiff rests on the unwarranted assumption that, by being for some years the maker and vender of a patent-expired article, it thereby could acquire and had acquired an exclusive and perpetual right to make it. Were this the law, it would follow that if Mayall, after the expiration of his patent, had been the only maker of his hose for some years following, he could by his own act turn his patent, which the law limited to 17 years, into a perpetual patent.

The decree below will be reversed, and the record remanded, with instructions to dismiss the bill.

### On Petition for Reargument.

PER CURIAM. We have carefully considered the petition for reargument, but see nothing to be gained by granting the motion. In our view there was no proof of any confusion of goods, or that any purchaser of the plaintiff's goods had been, or was likely to be, led to buy the defendant's under the belief he was getting plaintiff's.

The petition for reargument is therefore denied.