**GOODYEAR TIRE & RUBBER CO. v. ROBERTSON, Commissioner of Patents.**

(District Court, D. Maryland.    April 2, 1927.)
No. 1123.

1. **Trade-marks and trade-names and unfair competition ⊙⟹3(4½)—Band of diamond-shaped figures, constituting tread of automobile tire, held not valid trade-mark, being descriptive and functional (Trade-Mark Act 1905, § 5 [Comp. St. § 9490]).**

Band of diamond-shaped figures of circumferentially disposed outstanding blocks, constituting tread of automobile tire, to prevent skidding, held not valid trade-mark, being merely descriptive, under Trade-Mark Act 1905, § 5. (Comp. St. § 9490), and constituting an important, if not essential, part of tire.

2. **Trade-marks and trade-names and unfair competition ⊙⟹1—"Trade-mark" is distinctive name, word, symbol, or device, indicating source from which chattel has come.**

A "trade-mark" is a distinctive, name, word, mark, emblem, design, symbol, or device, used in lawful commerce, to indicate or authenticate the source from which it has come, or through which has passed the chattel on or to which it is applied or affixed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Trade-Mark.]

3. **Trade-marks and trade-names and unfair competition ⊙⟹43—Mark forming useful and functional part of device is not a valid registrable trade-mark.**

Though a mark otherwise good may be so fabricated with the goods as to be integral therewith, if it forms a useful and functional part of the whole, it is not a valid trade-mark, and may not be registered.

4. **Trade-marks and trade-names and unfair competition ⊙⟹1—Design patent cannot operate as trade-mark, nor vice versa.**

A design patent cannot be made to operate as a trade-mark, nor can a trade-mark be used to perform the function of a design patent.

In Equity.    Suit by the Goodyear Tire & Rubber Company against Thomas E. Robertson, Commissioner of Patents.    Bill dismissed.

Wm. G. Henderson, of Washington, D. C., and Wm. Pepper Constable, of Baltimore, Md., for complainant.

A. W. W. Woodcock, U. S. Atty., of Baltimore, Md., and T. A. Hostetler, of Washington, D. C., for defendant.

SOPER, District Judge.    The bill of complaint in this case was filed under the provisions of section 9 of the Trade-Mark Act of February 20, 1905 (chapter 592, 33 Stat 724; Comp. St. § 9494), and section 4915 of the Revised Statutes (Comp. St. § 9460), in accordance with the ruling laid down in American Steel Foundries v. Robertson, 262 U. S. 209, 43 S. Ct. 541, 67 L. Ed. 953.    The purpose of the suit is to secure an adjudication authorizing the commissioner of patents to register a mark under the Trade-Mark Act in accordance with an application therefor filed by the complainant in the Patent Office on July 27, 1921.    The petition in the Patent Office alleged that the trade-mark was designed for use upon vehicle tires composed of rubber or rubber and fabric, and described it as follows:

"The distinctive and distinguishing features of the trade-mark comprise a series of circumferentially disposed outstanding blocks or elements, approximately diamond-shaped, and spaced by a series of grooves or lines which intersect each other at right angles, the blocks or elements being alined on parallel cross-planes.

"The trade-mark is impressed or otherwise formed in the tread surface of the goods, or by printing it on the cover, container, or wrapper of the goods, or by attaching to the goods or to the wrapping thereof a tag or label bearing the mark."

The Patent Office refused the application, on the ground that the design was a part of the tire itself, and was intended to prevent the slipping or skidding of the tire.    It was thought probable that the tread of the tire had become so well known as to indicate the product of the applicant, but that this was immaterial, since there was no evidence to show that the design was originally adopted solely for trade-mark purposes.    On appeal the Court of Appeals of the District of Columbia affirmed the ruling of the Patent Office in a memorandum opinion reported at 55 App. D. C. 400, 4 F.(2d) 1013.    The court said:

"The diamond-shaped projections which appellant claims as a trade-mark are clearly descriptive of the goods on which they are used, since they form a very essential part of the goods itself.    In other words, these projections are molded on the face of a rubber tire, either to enhance the wear, or to prevent skidding, or both.    Section 5 of the Trade-Mark Act of 1905 * * * among other things provides 'that no mark, which consists merely in * * * devices which are descriptive of the goods with which they are used, shall be registered.'    As suggested in brief of counsel for the Patent Office, 'the most accurate way of describing an article is possibly by the article itself.' "

[1] The complainant nevertheless contends that it is not seeking to register the article itself—that is, the tire—but only so much thereof as is indicated by the words "a band of diamond-shaped figures."    These words, it says,

accurately describe the mark and may be applied to anything in the world, without affording the slightest information of its nature or quality. Section 5 of the Trade-Mark Act (Comp. St. § 9490) contemplates that even the name of an individual may be a trademark, if written, printed, impressed, or woven in some particular or distinctive manner, and it has been decided that it is no objection to the validity of an otherwise good mark that it is impressed upon or inherent in the article manufactured, as in the case of a watermark upon paper, a word or symbol blown into a glass bottle or jar, or an arbitrary mark on the head of a horseshoe nail. Samson Cordage Works v. Puritan Cordage Mills (C. C. A.) 211 F. 603, 605.

But it is quite clear that the complainant does not seek to register a definitely specified mark as an arbitrary symbol indicative of the origin of the goods, apart from the goods themselves, but a mark which, if not an essential, is at least an important part thereof. It consists of outstanding diamond-shaped blocks disposed circumferentially upon the tire so as to form the tread. If an attempt were made to register as a trade-mark applicable to automobile tires the words "diamond-shaped tread," no one could contend that the words were not descriptive of the goods. It is certain that the complainant is no better off by adopting the diamond-shaped tread itself to convey the idea.

The complainant suggests that certain facts, now the subject of stipulation between the parties, were not brought out or clearly understood in the Patent Office, and were not mentioned in the opinion of the Court of Appeals. The mark in question was adopted in 1908 to indicate origin. It was available for appropriation since, prior to the Goodyear tire, no tire bearing the mark or any confusing resemblance thereof had been made or sold. Thus for nearly 20 years it has been applied to many millions of tires, so that the purchasing public in the United States and foreign countries has long been familiar with it, as identifying the goods of the complainant. The diamond tread, presenting a broken surface molded into rubber, does tend to prevent slipping and skidding; but the particular Goodyear design is not an *essential* element, since any rough or broken tread has the same effect, and the size, shape, and arrangement of the projections and depressions may vary within wide limits without affecting the operation.

The argument seems to be that, even although the mark is descriptive of the goods to

which it is attached, nevertheless it is registerable, since it now indicates to all men the origin of the goods, and its exclusive appropriation by Goodyear has not interfered and will not interfere with the use by other manufacturers of nonskid devices of equal efficiency. But the prohibition in section 5 of the Trade-Mark Act against the registration of descriptive words is unqualified. It does not authorize their registration, if adopted to indicate origin, or if publicly used for any particular period of time. No matter how long the use continues, the mark will never become a technical trade-mark. Judge Lurton in Vacuum Oil Co. v. Climax Refining Co. (C. C. A.) 120 F. 254, 256, said that "the descriptive word or sign or symbol, * * * may acquire a secondary significance denoting origin or ownership, * * *. But this secondary significance is not protected as a trademark, for a descriptive word is not the subject of a valid trade-mark; the only office of a trade-mark being to indicate origin or ownership. When a descriptive word * * * comes by adoption to have a secondary meaning, * * * its use in this secondary sense may be restrained, if it amounts to unfair competition. In such case, if the use of it by another be for the purpose of palming off the goods of one as and for the goods of another, a court of equity will interfere for the purpose of preventing such a fraud. But this kind of relief depends upon the facts of each case, and does not at all come under the rules applicable to the infringement of a trade-mark."

See, also, Brennan v. Emory (C. C. A.) 108 F. 624.

It is immaterial, if it be true, that the complainant is assured a monopoly of the mark in the United States under the rules of law which forbid unfair competition, and that the registration of the mark is necessary only for the preservation of complainant's foreign trade. It is stipulated that, so long as the trade-mark is not registered in the United States, registration in many foreign countries cannot be secured, and absence of registration not only leaves the complainant's trade in some foreign countries at the mercy of commercial pirates selling inferior imitations, but also allows any resident of such countries who first registers the mark to appropriate it, regardless of ownership, as defined by the law of the United States. These circumstances, it must be confessed, are persuasive, and there is high authority for a "fair, even liberal, construction of the act, designed as it is to promote the domestic and foreign trade of our country."

Beckwith v. Commissioner of Patents, 252 U. S. 538, 546, 40 S. Ct. 414, 417, 64 L. Ed. 705, but nevertheless it is not within the power of the court to disregard the plain terms of the statute.

[2] Registration of the diamond tread is improper, also, because it is a functional part of the tire. The Trade-Mark Act of the United States does not purport to create trade-marks. It provides merely for registration of them by the owner, while the property in them, the right to their exclusive use, and their characteristics generally, rest upon the laws of the several states. A trade-mark may be defined as a distinctive name, word, mark, emblem, design, symbol, or device used in lawful commerce, to indicate or authenticate the source from which has come, or through which has passed, the chattel upon or to which it is applied or affixed. Hopkins on Trade-Marks, § 3. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Mfg. Co. v. Trainer, 101 U. S. 51, 25 L. Ed. 993.

[3] But the chattel itself is not and cannot be the trade-mark. Moreover, while a mark otherwise good may be so fabricated with the goods as to be integral therewith, yet, if it forms a useful and functional part of the whole, it is not a valid trade-mark and may not be registered. Otherwise the owner would secure not merely the exclusive right to use the mark, but also the exclusive right to make the article itself, and would thus secure a perpetual monopoly irrespective of patentability. Re American Circular Loom Co., 28 App. D. C. 446; Putnam Nail Co. v. Dulaney, 140 Pa. 205, 21 A. 391, 11 L. R. A. 524, 23 Am. St. Rep. 228; In re Barrett Co., 48 App. D. C. 586; In re United States Tire Co., 44 App. D. C. 469; Hood Rubber Co. v. Needham Tire Co., 48 App. D. C. 227; Davis v. Davis (C. C.) 27 F. 490; Daniel v. Electric Hose & Rubber Co. (C. C. A.) 231 F. 827; Smith v. Krause (C. C.) 160 F. 270.

The complainant points out that the manufactured article in certain of these cases had been covered by a patent which had expired, and hence the right to make it had become public property. But certainly the complainant acquired no greater right in its diamond tread by failing to obtain a patent. Even if the device were patentable, the monopoly has long since been abandoned by the complainant. No one, of course, has the right to palm off his goods as those of the complainant, but, subject to this qualification, the right to manufacture is open to all.

[4] It may be noted in passing that the complainant owns two design patents, Trogner

18 F.(2d)—41

of 1921 and Litchfield of 1924, which seem to cover the diamond tread. The validity of these patents it now seems to doubt, because of the public use which it inaugurated in 1908; but, in any event, they are immaterial, since a design patent cannot be made to operate as a trade-mark. North British Rubber Co. v. Racine Rubber Tire Co. (C. C. A.) 271 F. 936. Nor, it may be added, can a trade-mark be used to perform the function of a design patent.

The complainant chiefly relies upon the decisions in the Second Circuit involving a trade-mark of the Capewell Horse Nail Company. See Capewell Horse Nail Co. v. Mooney (C. C.) 167 F. 575; affirmed in (C. C.) 172 F. 826; Capewell v. Green (C. C. A.) 188 F. 20. This trade-mark consisted of certain check marks on the under or beveled face of a horse shoe nail head, similar to the marking used on tools to provide gripping surfaces. As it appeared upon the nail head, it was distinctly a mark of origin and indicated the manufacturer. It was adopted by infringers for the purpose of confusing their goods with the Capewell product. In defense it was claimed that the nails were necessarily marked in the course of manufacture, when the metal passed through rollers provided with projections to keep the metal from slipping. The Circuit Court of Appeals held that the burden of proof was upon the infringer to establish the point, and that he had failed to do so. Nevertheless the court concurred in the conclusions of the trial court that, even if it was necessary to have a gripping surface upon the roller, it was not necessary to select the one device which would produce upon the nail the exact counterpart of the Capewell mark. Infringement was therefore declared.

The decision might have been based upon the ground of unfair competition; as rendered it seems to have conferred upon the owner, not only a monopoly in the use of the trade-mark, but also in effect the exclusive right to use a specific form of roller in the manufacture of the goods. Similarly, the complainant contends, it is entitled to the exclusive use of the tread of its adoption, notwithstanding its functional value, since countless other equally useful designs are left to the trade. But the Capewell Cases do not hold that the whole or a useful part of an article may be adopted as a trade-mark, and to press the ruling to such a conclusion involves a result so revolutionary in the system of patent and trade-mark laws that it is impossible to suppose it was contemplated by the learned Court of Appeals of the Second Circuit. See Herz v. Loewen-

stein, 40 App. D. C. 278; Hoyt v. Hoyt, 143 Pa. 623, 22 A. 755, 13 L. R. A. 343, 24 Am. St. Rep. 575.

The bill of complaint will be dismissed.